DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
KIMBERLY A. BLISS, State Bar #207857
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3861
Facsimile:     (415) 554-3837
E-Mail:        kimberly.bliss@sfgov.org

Attorneys for Defendants CITY AND COUNTY OF
SAN FRANCISCO[1] AND PETER WALSH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIR H. SHERVIN AND SHIRIN N. SHERVIN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF NEWARK AND NEWARK CITY POLICY DEPARTMENT, ROBERT DOUGLAS, RICHARD LOPEZ, WILLIAM SHAFFER ET AL., AND THEIR SUPERVISORS; CITY OF SAN FRANCISCO AND SAN FRANCISCO POLICE DEPARTMENT, PETER WALSH ET AL., AND THEIR SUPERVISORS, THE SANTA RITA CITY JAIL, ET AL., AND THEIR SUPERVISORS, THE CITY OF SAN FRANCISCO OFFICE OF SENATOR BARBARA BOXER, ERIK J. VIZCAINO, ET AL., AND THEIR SUPERVISORS, CONSPIRATORS AND COCONSPIRATORS, DOES A TO Z (1 TO 100),<br><br>Defendants. | C08-CV-01631 VRW<br><br>**DECLARATION OF KIMBERLY BLISS IN SUPPORT OF DEFENDANTS PETER WALSH AND THE CITY AND COUNTY OF SAN FRANCISCO'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PROCESS AND SERVICE**<br><br>Hearing Date:     January 22, 2009<br>Time:     2:30 p.m.<br>Place:     Courtroom 8<br><br>Trial Date:     None set |

---

[1] Erroneously sued herein as separate legal entities "City of San Francisco" and "San Francisco Police Department."

1    I, Kimberly Bliss, am a Deputy City Attorney with the San Francisco City Attorney's Office.

2    I am the attorney assigned to represent Defendants City and County of San Francisco and Peter

3    Walsh in this action. Unless otherwise noted, I have personal knowledge of the content of this

4    declaration.

5        1.    I attach as **Exhibit A** a true and correct copy of the federal docket in this action,

6    printed on September 3, 2008.

7        2.    I attach as **Exhibit B** a true and correct copy of Plaintiffs' Summons, Proof of Service

8    and First Amended Complaint purportedly served on City employee Peter Walsh. The address on the

9    Summons (*i.e.*, 850 Bryant Street, Rm. 575) is the address for the Legal Division of the San Francisco

10    Police Department. I am informed and believe that Mr. Walsh is a current employee of the San

11    Francisco Police Department, but does not work within its Legal Division, and has not personally

12    received a copy of the Summons and First Amended Complaint in this matter. A civilian assistant in

13    the SFPD's Legal Division forwarded the documents to the City Attorney's Office.

14        3.    I attach as **Exhibit C** for the Court's ease of reference, true and correct copies of

15    various City and County of San Francisco Charter sections, including Article III, Section 3.100 and

16    Article IV (Executive Branch—Boards, Commission and Departments) Sections 4.100 and Section

17    4.127.

18        I declare under penalty of perjury under the laws of California that the foregoing is true and

19    correct, and that I signed this declaration on September 3, 2008, at San Francisco, California.

20

21                   /s/ Kimberly A. Bliss

22                   Kimberly Bliss

23

24

25

26

27

28

## PROOF OF SERVICE

I, FOLASHADE ADESANWO, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the within entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Sixth Floor, San Francisco, CA 94102.

On September 3, 2008, I served the attached:

**DECLARATION OF KIMBERLY BLISS IN SUPPORT OF DEFENDANTS PETER WALSH AND THE CITY AND COUNTY OF SAN FRANCISCO'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PROCESS AND SERVICE**

on the interested parties in said action, by placing a true copy thereof in sealed envelope(s) addressed as follows:

Dr. Amir H. Shervin                     Shirin N. Shervin
1 Muroc Lake Dr., #125                  1 Muroc Lake Dr., #125
Novato, CA 94949                        Novato, CA 94949+

Tel: 415-234-6367                       Tel: 415-234-6367
PRO SE PLAINTIFF                        PRO SE PLAINTIFF

and served the named document in the manner indicated below:

☒    **BY UNITED STATES MAIL**: Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed September 3, 2008, at San Francisco, California.

/s/ FOLASHADE ADESANWO
FOLASHADE ADESANWO

BLISS DECL. ISO CCSF'S MOT TO DISMISS            3            n:\lit\li2008\090221\00506845.doc
CASE NO. C08-CV-01631 VRW

# EXHIBIT A

**DECLARATION OF KIMBERLY BLISS IN SUPPORT OF DEFENDANTS
PETER WALSH AND THE CITY AND COUNTY OF SAN FRANCISCO'S
NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PROCESS
AND SERVICE**

**3:08-cv-01631-VRW** Shervin v. City of Newark, California et al
Vaughn R. Walker, presiding
Date filed: 03/26/2008
Date of last filing: 08/28/2008

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| -- | *Filed:* | 03/26/2008 | Case Referred to ECF |
|  | *Entered:* | 03/28/2008 | |
| 1 | *Filed:* | 03/26/2008 | Notice of Removal |
|  | *Entered:* | 03/28/2008 | |
| 2 | *Filed:* | 03/26/2008 | ADR Scheduling Order |
|  | *Entered:* | 03/28/2008 | |
| 3 | *Filed & Entered:* | 03/28/2008 | Certificate of Service |
| 4 | *Filed & Entered:* | 04/01/2008 | MOTION to Relate Case |
|  | *Terminated:* | 04/14/2008 | |
| 5 | *Filed & Entered:* | 04/07/2008 | Stipulation |
| 6 | *Filed & Entered:* | 04/07/2008 | Jury Demand |
| 7 | *Filed & Entered:* | 04/14/2008 | Order on Motion to Relate Case |
| 8 | *Filed & Entered:* | 04/22/2008 | Motion to Dismiss |
|  | *Terminated:* | 08/11/2008 | |
| 9 | *Filed & Entered:* | 04/22/2008 | Memorandum in Opposition |
| 10 | *Filed & Entered:* | 04/22/2008 | Proposed Order |
| 11 | *Filed & Entered:* | 04/22/2008 | Motion to Strike |
|  | *Terminated:* | 08/11/2008 | |
| 12 | *Filed & Entered:* | 04/22/2008 | Memorandum in Opposition |
| 13 | *Filed & Entered:* | 04/22/2008 | Proposed Order |
| 14 | *Filed & Entered:* | 04/23/2008 | ADR Certification (ADR L.R. 3-5 b)of discussion of ADR options |
| 15 | *Filed & Entered:* | 04/30/2008 | Clerk's Notice |
| 16 | *Filed & Entered:* | 05/01/2008 | Certificate of Service |
| 17 | *Filed:* | 05/01/2008 | Motion to Withdraw as Attorney |
|  | *Entered:* | 05/05/2008 | |
|  | *Terminated:* | 06/19/2008 | |
| 18 | *Filed:* | 05/01/2008 | Proposed Order |
|  | *Entered:* | 05/05/2008 | |
| 19 | *Filed & Entered:* | 05/09/2008 | Clerk's Notice Continuing Motion Hearing |
| 20 | *Filed & Entered:* | 05/28/2008 | Statement of Non-Opposition |
| 21 | *Filed & Entered:* | 06/16/2008 | Order |
| 22 | *Filed & Entered:* | 06/18/2008 | Declaration in Support |
| -- | *Filed:* | 06/19/2008 | Order on Motion to Withdraw as Attorney |
|  | *Entered:* | 06/20/2008 | |

| 23 | *Filed:* 06/19/2008<br>*Entered:* 06/20/2008 | Motion Hearing |
| 24 | *Filed & Entered:* 06/22/2008 | Order |
| 25 | *Filed & Entered:* 07/08/2008 | Transcript |
| 26 | *Filed:* 07/29/2008<br>*Entered:* 07/30/2008 | Memorandum in Opposition |
| 27 | *Filed:* 07/29/2008<br>*Entered:* 07/30/2008 | Amended Complaint |
| 28 | *Filed:* 07/29/2008<br>*Entered:* 07/30/2008 | Summons Issued |
| 29 | *Filed:* 07/29/2008<br>*Entered:* 07/30/2008 | Summons Issued |
| 30 | *Filed:* 07/29/2008<br>*Entered:* 07/30/2008 | Summons Issued |
| 31 | *Filed & Entered:* 08/04/2008 | Notice (Other) |
| 32 | *Filed & Entered:* 08/04/2008 | Notice (Other) |
| 33 | *Filed & Entered:* 08/08/2008 | Motion to Dismiss |
| 34 | *Filed & Entered:* 08/08/2008 | Proposed Order |
| 35 | *Filed & Entered:* 08/08/2008 | Motion to Strike |
| 36 | *Filed & Entered:* 08/08/2008 | Proposed Order |
| 37 | *Filed:* 08/20/2008<br>*Entered:* 08/22/2008 | Memorandum in Opposition |
| 38 | *Filed & Entered:* 08/27/2008 | Motion to Dismiss |
| 39 | *Filed & Entered:* 08/28/2008 | Notice of need of ADR Phone Conference (ADR L.R. 3-5 d) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/03/2008 16:28:59 | | | |
| **PACER Login:** | sf0193 | **Client Code:** | shervin |
| **Description:** | History/Documents | **Search Criteria:** | 3:08-cv-01631-VRW |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# EXHIBIT B

**DECLARATION OF KIMBERLY BLISS IN SUPPORT OF DEFENDANTS PETER WALSH AND THE CITY AND COUNTY OF SAN FRANCISCO'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PROCESS AND SERVICE**

AO 440 (Rev. 04/08) Civil Summons

# UNITED STATES DISTRICT COURT

### for the

*Amir H. Shervin*
*Shirin H. Shervin*

_____
Plaintiff )
)
*Inspector Peter Walsh* )    Civil Action No. *308-CV-01631-VRW*
_____ )
Defendant )
)

## Summons in a Civil Action

To: *(Defendant's name and address)*

*Peter Walsh*
*SFPD*
*850 Bryant St Rm 575*
*San Francisco CA 94103*

A lawsuit has been filed against you.

Within _20_ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**RICHARD W. WIEKING**

Date: _JUL 2 9 2008_

Name of clerk of court

_____
Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

AO 440 (Rev. 04/08) Civil Summons (Page 2)

---

### Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on ___Peter Walsh___,
by:

    (1) personally delivering a copy of each to the individual at this place, _____

    _____ ; or

    (2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
      who resides there and is of suitable age and discretion; or

    (3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
    _____ ; or

    (4) returning the summons unexecuted to the court clerk on _____ ; or

    (5) other (specify)  depositing the sealed envelope with the U.S. Postal Service
       with postage fully prepaid.
       Certified Mail 7007 2560 0003 0713 0748

My fees are $ ___50.00___ for travel and $ ___75.00___ for services, for a total of $ 0.00 125.

Date: ___7/30/08___

_____
Server's signature

___Michael Marino___
Printed name and title

___367 Bahia Bay, San Rafael, CA 94901___
Server's address



1  Dr. Amir H. Shervin
2  And, Shirin N. Shervin,
3  1 Muroc Lake Dr., # 125
   Novato, CA. 94949
4  1.  Tel: (415) 234-6367

5  Plaintiffs:

6  ## UNITED STATES DISTRICT COURT
7  ## NORTHERN DISTRICT OF CALIFORNIA
   ## SAN FRANCISCO DIVISION

8  Amir H. Shervin, and
9  Shirin N. Shervin, et al.,

10         Plaintiffs, in pro per  )    <u>Case No:  308-CV 01631-VRW</u>

11  v.                             )    Full Bench and Jury Trial

12                                 )
                                   )
13                                 )    **FIRST AMENDED COMPLAINT**
    City of Newark and Newark City Police )
14  Department, Robert Douglas, Richard  )  Unlawful, concerted and retaliatory
    Lopez, William Shaffer, et al., and their )  invasion of privacy, search and
15  Supervisors; City of San Francisco and )  seizure, aggravated assault and
    San Francisco Police Department Peter)  battery, use of excessive force and
16  Walsh, et al, and their supervisors, The )  infliction of severe bodily and
    Santa Rita City Jail, et al., and their  )  emotional injuries, kidnapping, false
17  Supervisors, The City of San Francisco )  charges, false arrest and detention,
    Office of Senator Barbara Boxer, Erik J.)  massive violations and abuse of
18  Vizcaino, et al., and their supervisors  )  constitutional rights, breach of
19  Conspirators and coconspirators,      )  peace and acts of terrorism, for the
    Does A to Z (1 to 100)                )  purpose of defamation, and actual
20  —————————————————————/  obstruction of justice.

21

22              **1- Jurisdiction.**

23  This court has jurisdiction over this complaint, because it arises under the laws

24  of the United States, Statutes: 42 USC S. 1981 (allien discrimination), 42 USC

25  S. 1982 (racial discrimination), 42 USC S. 1983 (civil rights violations), 42 USC

26  S.1985 (civil and criminal conspiracy), 42 USC S.1932 (Monnel's Act), 28 USC

27

28

S.1343 (Molier's Act)(intentional violations of various aspects of civil rights and liberty interest), 28 USC S. 1346 Federal Tort Claims Act, s.s.(b) 2671 et seq (Continued Violation Rule), (The Rules Enabling Act), 28 USC S. 2412 (Equal Access to Justice ACT), 28 USC S. 242 (Equal Treatment Under Law), 28 USC S.1331 (Title28), 28 USC S. 2284 (personal prejudice), 28 USC S. 2070 (failure/refusal to enforce court's own rules and orders), 18 USC S 242 (dilatory tactics to prosecute),KKK Act of 1972 & 73, Sherman Anti Trust Act (Cabalism), 18 USC S. 1651 (A family tree of conspiracy)(A Grand Jury Investigations), 18 USC S. 1201 (kidnapping), 18 USC S. 3500 (Jencks Act), 18 USC S. 1503 (Imperabitus order),18 USC S.1562 (orders obtained by fraud), 18 USC S, 1962 (RICO Predicate Act), CCCP S. 3294, (Councious Cruelty).

Comes Now the Plaintiffs Amir H. Shervin and his daughter Shirin N. Shervin, incorporating all claims in the original complaint, except (page 3, line 13) filed "erroneously" by their former counsel James P. Swanseen, and state:

1. Plaintiffs are natural adult persons within the United States, who now reside in the City of Novato, County of Marin, California.

2. Defendant CITY OF NEWARK, (hereinafter refereed to as "Newark' is, and at all times mentioned herein was, a municipal corporation" duly organized under the laws of the State of California, situated in the County of Alameda.

3. Defendants ROBERT DOUGLAS (Badge No. 59), RICHARD LOPEZ (Badge No. 77), and WILLIAM SHAFFER (Badge No. 46) are individuals who at all times herein related were employee(s) of defendant City of Newark, being employed as police officers, and in doing the acts described

herein were acting under color of law within the scope of their employment.

4.  Defendant City of San Francisco and the City of San Francisco Police Department (hereinafter refereed to as "SFPD") is, and at all times mentioned herein was, a Municipal Corporation duly organized under the laws of the State of California, situated in the County of San Francisco. And, the defendant PETER WALSH, et al., is an individual, who at all times mentioned herein was an employee of defendant City of SFPD, employed as police inspector, and in doing the acts described herein was acting within the scope of his employment under the color of law.

5.  Defendants The SANTA RITA JAIL (hereinafter "SRJ", is and at all times mentioned herein was an entity duly organized under the laws of the State of California, situated in the County of Alameda, which in doing the acts described herein was acting under the color of law.

6.  Defendant ERIK J. VIZCAINO, is a "person" who at all times mentioned herein was an employee of the San Francisco office of the U.S. Senator Barbara Boxer, and in doing the acts described herein was acting within the scope of his employment under the color of law.

7.  Defendants Does A to Z (1 to 100) inclusive, are sued herein under their real and/or fictitious names. Defendants true names and capacities are unknown to plaintiffs. When their true names and capacities are ascertained, plaintiffs will amend by inserting their true names and capacities therein.

8.  Plaintiffs are informed and believe and thereon allege that each of the named and identified defendants is responsible, in some manner for the

3

occurrences herein alleged and that plaintiffs damages, losses and injuries are directly and proximately caused by said defendants and all of them, both as the state employee and in their individual capacity. Therefore, each reference in this complaint to "defendant" or "defendants" or a specifically named defendant refers also to all defendants sued under fictitious names.

9.  Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the defendants, including all defendants sued under fictitious names, was the agent and employee of each of the remaining defendants and, in doing the things hereinafter alleged, was acting within the course and scope of this agency and employment.

10. Plaintiffs are required and have complied, with applicable claims statutes.

**Venue**

11. Plaintiffs allege that all acts or done by the defendants, were and continue to be acts in violations of both **CIVIL** and **CRIMIAL** laws under the constitution of the United States, and the laws and constitution of the State of California. As it is also, in violations of the United Nations Declaration of Human Rights. However, plaintiffs in pro per, are not sure that this Court <u>has</u> or <u>has not</u> the proper jurisdiction of this claims. Thus, plaintiffs will and do hereby move this Court that this case(s) be duly assigned to a court of proper jurisdiction.

**INTRODUCTION**

12. Plaintiffs allege and prove that during a long period of 15 years, plaintiffs and their interfaith community and media supporters, have on numerous

4

occasions petitioned the government (State and Federal) and politicians

such as the state Senator Barbara Boxer, regarding over three decades of

persecution of the plaintiff and his family, children and other loved ones.

None of the petitions to Senator Barbara Boxer was responded to. Soon

after plaintiff received a call from Senator Kennedy's office, informing that

Senator was very concerned about the matter and had refered the case to

Senator Boxer in California, for an immediate resolution of this matter. It was

because of Senator Kennedy's directive that plaintiff received a call from

Senator Boxer's office, informing that a meeting in this regard was being

arranged and plaintiff would be soon invited regarding his situation. Also, an

Interfaith Coalition Petition to Senator Edward Kennedy was itself refereed

to Senator Boxer in California, with a personal directive by Senator

Kennedy, to find an early resolution to this matter.

13. Meanwhile, certain members of the Iranian Christian Church of Sunnyvale,

California were in contact with Senator Boxer and her staff, during the first

half of the year 2006, assuring of an upcoming settlement. Plaintiff was

enticed to sign a church drafted statement to be delivered to Senator Boxer.

14. During the months of June and July 06, Plaintiff contacted senator Boxer's

office and was told by an aide **Benjamin Kurtz** that the file of the case was

missing or perhaps removed by the prior aide **Shawn Bananzadeh**,  asking

plaintiff to forward another package. On or about July 20, 06. a new

package was mailed to Mr. Ben. Kurtz. However, despite promises to

arrange for a meeting, nothing happened for the next two months. Here, the

community members suggested that we go to Senator Boxer's office to
inquire about the status of these petitions and Senator Kennedy's referral.

15. On the morning of **September 20, 2006**, accompanied by Mr. **Hooshang Bastan** and Mr. **Mehrdad Baharloo**, we visited three politicians offices. The **Congressman Pete Stark, Senators Diane Feinstine and Barbara Boxer.**

16. We arrived in the office of Senator Boxer at about 11: 30 a.m. We were asked to fill in a form, which an aide took in while we were seated and waiting. Minutes later the aide came out saying that someone in the office had said to tell us, that <u>the office could not do anything in this case.</u> Not expecting such response, I said <u>please tell the gentleman to write down what he just said, as we needed to send the letter to inform senator Kennedy and the interfaith coalition leaders that senator Boxer could not or did not help.</u> The aide went back in and we were once again sitting quietly.

17. At this time, the inner door suddenly opened and a person burst out very agitated. He rushed straight towards me. I felt he was about to physically attack me, and I stood up, perhaps to protect myself. He was irate and shouting <u>"didn't you hear what I said. We are not helping you. Do you understand that? We don't need to write a letter."</u> Then he went on screaming <u>"get out of here, get out of here. Call the cops, call the cops !"</u> We were shocked and felt insulted. I told him that "this was not his office or even Boxer's office. This was the community office and people would come to a politician with their problems and grievances and, that his act was unbefitting of such an office.

6

18. Plaintiff and many in the community believe that this looked like a "set up" procreated by certain members or agents of SFPD, that upon our arrival in the office, Vizcaino would stage an assault, as he did and then make a report to the hostile police, who in turn would take over to retaliate, for plaintiff's years of earlier legal actions against SFPD, for its' previous raids of myplaintiffs' home. The Dockets of the Federal District Court and the Ninth Circuit Court of Appeals include several decisions, rulings and orders by these courts against SFPD. Furthermore, the interfaith coalition members believe that the state defendants and SFPD and their influential counsels and lobbyists were viciously successful in subverting the court and the judicial process in these cases, in order to remain Fugitive from Justice.

19. After the incident on September 20, 2006, we wrote a letter to Senator Boxer's Washington, D. C. office, asking that Erik Vizcaino be reprimanded for his gross act of misconduct. But, we never received any response.

**The Aftermath**

20. On October 5, 06, two weeks after the day of incident, I received a call from a Peter Walsh, claiming to be a police inspector. He said he was investigating a complaint from Erik Vizcaino. I asked Mr. Walsh to please write to me identifying the accuser and the nature of his accusation and I would respond. Mr. Walsh said "oh' no., there is no need of writing. Just tell me why you went there and what happened next?." I told him everything however, when I attempted to give him some background of the

7

case, he stopped me by saying "you don't need to tell me, I know well about

you and your struggle. He then said "o.k. sir, no problem and hunged up.

21. Over two months later, on Thursday December 7, 06, at about 10: 20 a.m.,

I was home attending my daughter, who was sick and did not go to school

that day. At the time, my children, my daughter (16) and my son (14) and I

were guests at Mr. Hooshang Bastan's home in Newark. I advised my

daughter to sit on the deck in the sun and, I was sitting next to her and

encouraging her to have some food and medicine. I heard the phone ringing

and went to the kitchen to take the call. To my utter surprise it was Walsh

again. I said "Good morning officer Walsh, Merry Christmas". In return, he

said "but I have a bad news for you." He said "you must come to my office

tomorrow at 9:a.m. I was shocked. I said "Mr. Walsh you called me over two

months ago about this matter however, you never charged me with

anything. Now over two months later why you are asking to see me so

urgently? He said "that is it, you must come tomorrow." I said Mr. Walsh my

daughter is sick at home and I myself am under treatment for ill health and

beside the holy Season of Christmas was upon us, and I ask you to give me

some time until after New Year. He said "No. no, you must come tomorrow,

because I do not wish to send men to take you in front of your children or

neighbors". I told him, surely this was not an emergency situation, otherwise

you would not have waited for over two months to get back to me and I

don't know why you are rushing me. Again, I said I needed some time to get

ready. He said how much time you Need? And I said "Give me 10 days". He

8

said "No, I can't do that, that is too long". I then asked "How about 3 days? He agreed and conversation ended..

22. I called my host Mr. Bastan, who was out of the house at the time and told him about the call. He said he would be there, in no time. Soon he came in and called Mr. Walsh to question him about the matter. While the two were talking, I heard my daughter calling me from on the deck. I rushed to her side and she said "papa, were you talking to a policeman ?" I said yes but don't you worry, everything is alright. I tried again to give her medication.

23. It was at this time that we heard some loud noises in the house and, all of a sudden several policemen (at least three), rushed on to the deck. It was unexpected. I stood up gently and said **"Good morning officers, Merry Christmas."** They appeared extremely hostile. One officer said "are you Amir"?, I said "yes", and then two officers rushed twoards me grabbed both of my wrists and twisted my arms behind my back, while another officer kicked my legs out from under me throwing me to the deck. All in front of my teribly frightened and crying daughter. While on the ground, they kicked and pounded my body and hitting and mauling my head and face to the hard ceck while pressing a baton on my neck, as if trying to sufocate me. I sensed the feeling of an impending death. Then I heard the Moaning of my daughter and knew that they were beating her too, as she was screaming and crying for help.

24. What happened next is so utterly graphic and so extremely disturbing that it makes it almost impossible for me to describe herein. Therefore, I seek

9

18. Plaintiff and many in the community believe that this looked like a "set up" procreated by certain members or agents of SFPD, that upon our arrival in the office, Vizcaino would stage an assault, as he did and then make a report to the hostile police, who in turn would take over to retaliate, for plaintiff's years of earlier legal actions against SFPD, for its' previous raids of myplaintiffs' home. The Dockets of the Federal District Court and the Ninth Circuit Court of Appeals include several decisions, rulings and orders by these courts against SFPD. Furthermore, the interfaith coalition members believe that the state defendants and SFPD and their influential counsels and lobbyists were viciously successful in subverting the court and the judicial process in these cases, in order to remain Fugitive from Justice.

19. After the incident on September 20, 2006, we wrote a letter to Senator Boxer's Washington, D. C. office, asking that Erik Vizcaino be reprimanded for his gross act of misconduct. But, we never received any response.

## The Aftermath

20. On October 5, 06, two weeks after the day of incident, I received a call from a Peter Walsh, claiming to be a police inspector. He said he was investigating a complaint from Erik Vizcaino. I asked Mr. Walsh to please write to me identifying the accuser and the nature of his accusation and I would respond. Mr. Walsh said "oh' no., there is no need of writing. Just tell me why you went there and what happened next?." I told him everything however, when I attempted to give him some background of the

7

case, he stopped me by saying "you don't need to tell me, I know well about

you and your struggle. He then said "o.k. sir, no problem and hunged up.

21. Over two months later, on Thursday December 7, 06, at about 10: 20 a.m.;

I was home attending my daughter, who was sick and did not go to school

that day. At the time, my children, my daughter (16) and my son (14) and I

were guests at Mr. Hooshang Bastan's home in Newark. I advised my

daughter to sit on the deck in the sun and, I was sitting next to her and

encouraging her to have some food and medicine. I heard the phone ringing

and went to the kitchen to take the call. To my utter surprise it was Walsh

again. I said "Good morning officer Walsh, Merry Christmas". In return, he

said "but I have a bad news for you." He said "you must come to my office

tomorrow at 9:a.m. I was shocked. I said "Mr. Walsh you called me over two

months ago about this matter however, you never charged me with

anything. Now over two months later why you are asking to see me so

urgently? He said "that is it, you must come tomorrow." I said Mr. Walsh my

daughter is sick at home and I myself am under treatment for ill health and

beside the holy Season of Christmas was upon us, and I ask you to give me

some time until after New Year. He said "No. no, you must come tomorrow,

because I do not wish to send men to take you in front of your children or

neighbors". I told him, surely this was not an emergency situation, otherwise

you would not have waited for over two months to get back to me and I

don't know why you are rushing me. Again, I said I needed some time to get

ready. He said how much time you Need? And I said "Give me 10 days". He

said "No, I can't do that, that is too long". I then asked "How about 3 days? He agreed and conversation ended..

22. I called my host Mr. Bastan, who was out of the house at the time and told him about the call. He said he would be there, in no time. Soon he came in and called Mr. Walsh to question him about the matter. While the two were talking, I heard my daughter calling me from on the deck. I rushed to her side and she said "papa, were you talking to a policeman ?" I said yes but don't you worry, everything is alright. I tried again to give her medication.

23. It was at this time that we heard some loud noises in the house and, all of a sudden several policemen (at least three), rushed on to the deck. It was unexpected. I stood up gently and said **"Good morning officers, Merry Christmas."** They appeared extremely hostile. One officer said "are you Amir"?, I said "yes", and then two officers rushed twoards me grabbed both of my wrists and twisted my arms behind my back, while another officer kicked my legs out from under me throwing me to the deck. All in front of my teribly frightened and crying daughter. While on the ground, they kicked and pounded my body and hitting and mauling my head and face to the hard ceck while pressing a baton on my neck, as if trying to sufocate me. I sensed the feeling of an impending death. Then I heard the Moaning of my daughter and knew that they were beating her too, as she was screaming and crying for help.

24. What happened next is so utterly graphic and so extremely disturbing that it makes it almost impossible for me to describe herein. Therefore, I seek

9

the leave of court to provide a separate and confidential reports in this regard. Also, since these horrid events, the community, the media and even the state of California's own appointed attorney-investigators have written and reported about these outrageous and heartless atrocities by those brutal elements and tort-feasors, a non-exclusive summary of the defendants' brutal and despicable acts are provided hereinafter below:

24.

## CAUSES OF ACTION
### AGAINST ERIK J. VIZCAINO AND HIS SUPERVISORS, ET AL.

1.  For unexpected and possibly premeditated assault, to cause for a totally unexpected, unwanted and undesired altercation, to be used by the hostile SFPD, to stage its December 7, 2006 raid on the plaintiffs' home.

2.  For reporting and filing false and dishonest charges against plaintiff.

3.  For expunging of files, documents and records in Senator Boxer's office.

4.  For participating in SFPD or other state defendants' deep rooted bias, prejudice and hostility towards plaintiff, benting to injure him and his rights.

5.  For slander and libel and defamation. And, for violating the rules of conduct while an employee of a Senator's office.

25.

## CAUSES OF ACTION
### AGAINST THE DEFENDANT THE CITY OF SAN FRANCISCO POLICE DEPARTMENT PETER WALSH, AL PEREZ, SAM WILLIAMS, JERRY EVERETT, AND THEIR SUPERVISORS, ET AL.

1. For conspiracy and concerted action (negligent and intentional), to injure plaintiffs, their rights and their legal actions, from 1977 to 2008,

2.  For consistent and ongoing acts of harassment, intimidation and threats of repercussion, imprisonment, deportation or other harms,

3.  For interference with plaintiffs' suits or legal actions against various other state defendants including UCSF, California Board of Dental Examiners, and the SFPD itself, in the forms of continued harassing and threatening calls and, for illegal and unwarranted apprehension and forced interrogations,

4.  For several and separate acts of illegal, unlawful and unwarranted invasions of home and privacy, assault and battery and use of excessive force and infliction of severe bodily and emotional injuries,

5.  For interfering with and actual abuse of plaintiffs' witnesses and attorneys.

6.  For preventing media from ever publishing their investigative reports.

7.  For filing false, dishonest, unfounded and frivolous charges against plaintiffs,

8.  For subverting process, by remaining in contempt of a court discovery order.

9.  For preventing Federal Court Calendared Trial, from ever reaching trial.

10. For preventing 9th Circuit Court of Appeals' **setting aside a dismissal with prejudice and remanded for trial, to reach trial again by fraud.**

11. For possibly conspiring with defendant Erik J. Vizcaino, to prevent the community petitions, from being brought to Senator Boxer's attention.

12. For using Erik Vizcaino's false and hostile report, to stage a new invasion on plaintiffs' home, on December 7, 2006. This court must take legal notice that the raid on plaintiffs' home occured **80 days** after the alleged incident.

(*) Plaintiffs affirmatively allege that neither on the day of invasion and nor prior to said date, plaintiff had any knowledge or information about any

11

such raid by SFPD or by their counterparts in Newark NPD. Therefore, any such assertion or statement by defendants, their counsels or, by the plaintiffs' own attorney James P. Swanseen in complaints filed by the latter, dated 1/29/08 **(page 3, line 13)** stating that "plaintiff was later informed and believed that the officers were executing an arrest warrant, that was issued out of San Francisco," All such assertion is **TOTALLY FALSE.** Affirmatively, plaintiffs re-allege that neither on the day of the invasion nor prior to that did plaintiffs were without information or knowledge about any such raid by SFPD or its own accomplices at Newark Police Department or, of the existance of such warrant. Hence, plaintiffs will and do hereby move this court for **order to Strike**, all such assertion insinuated by the counsels, in its entirety, as **false.**

26.

## CAUSES OF ACTION
## AGAINST THE DEFENDANTS CITY OF NEWARK ROBERT DOUGLAS, RICHARD LOPEZ, WILLIAM SHAFFER AND THEIR SUPERVISORS, ET AL.

1. For conspiracy and a concerted action with the defendants SFPD Peter Walsh and Erik J. Vizcaino (above), to invade plaintiffs' residence in Newark, on Thursday December 7, 2006, without a warrant, without any sincere cause and absolutely without due process and equal protection of law.

2. For intrusion and occupation of plaintiffs home, without a proper warrant and without permission of the occupants. As stated earlier, at the time of entry, the property owner Mr. Bastan was talking to inspector Walsh who asked asked him to tell the officers "not to enter the building but talk to him (Walsh).

3. For failing toproperly identify plaintiff and to remind him of his Miranda rights.

12

4.  For assault and battery and use of excessive force; for using choke hold and baton, in an attempt to suffocate plaintiff; for infliction of severe physical and emotional injuries and, for certain other gruesome acts, painful to disclose.

5.  For knocking plaintiff to the ground and battering him repeatedly and then dragging him out of the building to the street, without letting him walk.

6.  For staging a brutal, inhuman and truly dastardly assault and battery on the plaintiff's daughter (16), who was witnessing the onslaught by the assailants on her father, by grabbing her hair from behind and throwing her down on the deck and pummeling her body and, for repeatedly touching her breast and the private parts, under the guise of a body search.

7.  For false arrest and false detention, for hand cuffing, transporting and committing him to the Santa Rita Jail, in the most dehumanizing and indignified manner (that compel further and confidential description).

8.  For filing unfounded and fabricated charges against plaintiffs, despite the City of Newark Police Chief Ray Samules and three police agents' own Repeated apology regarding said police defendants own outrageous acts.

9.  For attempting to further defile the court and subvert the judicial process by dragging and sabotaging the case and the due administration of justice, in four different courts in four cities (San Francisco, Fremont, San Leaandro and San Rafael),so far 44 imes of appearances during the past 19 months.

10. For enticing plaintiffs' counsel **James P. Swanseen** to withdraw from the case compelling plaintiffs to fend for themselves. Also, for moving these actions filed in the state court, unilaterally to federal court.

13

27.

## CAUSES OF ACTION
## AGAINST THE SANTA RITA JAIL AND THEIR SUPERVISORS

1. For participating in defendants SFPD and NPD (Newark) concerted and conspiratorial action, and by aiding and abetting said criminal defendants' own multiple conspiracies and malice, fraud and oppression.

2. For detaining plaintiff without due process and equal protection of law,

3. For placing him in solitary confinement with no food and water for 3 days.

4. For failure or refusal to provide medical care or medication to plaintiff.

   (*) One guard pointing to his genitals said "you need tablets, come and have it. Another guard saying "do you have money, I will go to your bag and take the money and then bring you some tablets" Only to steal the money in my walet without bringing me anything.

5. For repeatedly manhandling me. And, for continously abusing, teasing, vexing and ridiculing me and, threatening me for example, of never seeing my children no more,

6. For moving me to various crowded, stuffy and unhygienic cells and forcing me to sit and/or stand among loud, filthy, dangerous and abusive mates, actually threatening and jeopardizing my health and life.

7. For lining me up and walking me with prisoners to and from various cells, buildings, corridors and yards and, forcing me to stand up next to the walls alone for extended time,

8. For transporting me in guarded vehicles in tight hand cuffs and restrains to distant locations through towns and streets.

9. For detaining in violation of a court order releasing me on bail. And, Detaining me for nearly 30 more hours.

10. For finally letting me go at about 9:p.m., in a severely stormy, cold and rainy night, without any help or transportation. Soon after I realized that Several of my personal belongings such as my cell phone, my booklets, my children pictures plus a $60.00 dollars cash were missing. The facility initially promising to find and return these items to me but never did.

28. Plaintiff affirmatively alleges and proves that the aforementioned acts or in-actions perpetrated by the named and identified defendant **Erik J. Vizcaino** (accuser), et al., of the office of the Senator Barbara Boxer. And the defendants the **City of San Francisco Police Department Peter Walsh** and, those agents in the plaintiffs prior law suits **Al Perez, Sam Williams and Jerry Everett**, et al., And defendants the **City of Newark Police Department Robert Douglas, Richard Lopez, William (Bill) Shaffer**, et al., And the "unknown" defendants in **Santa Rita Jail**, et al., was the cause of multiple injuries to plaintiffs of a severe and lasting type, actually emanating from the wrong act by defendants.

29. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each of the defendants, including all defendants under their real names and/or "fictitious" names, at the time of committing the acts or in-actions complained of, was the agent(s) of each of the remaining defendants, i.e., the office of Senator Barbara Boxer, the San Francisco Police Department, et al, City of Newark, Police Department, et al., and the Santa Rita Jail, et al., and in doing the things, acts or in-actions herein alleged or previously claimed in the plaintiffs' own prior law suits, was

15

acting within the course and scope of these agencies and/or employment. Therefore, each, any and all defendants is/are responsible, accountable, liable and sueable, in their capacities and/or in their private person(s), individually, severally and vicariously, for any and all damages, losses and injuries caused to plaintiffs.

3o    Plaintiffs allege and prove that, as a direct and proximate result(s) of wrong acts or in-actions by defendants and each of them plaintiffs suffered severe physical, emotional and psychological injuries; and to their persons, names, and characters, well being and lives.Plaintiffs have incurred, is incurring, and will continue to incur further such injuries and related costs, losses and expenditure in future. The full amounts of which damages, costs and losses are not known to plaintiffs and to be determined by the fact finders in a jury trial.

31.    Plaintiffs further allege and prove by preponderance of proven and indisputable evidence including various court files and records (State and Federal and the Ninth Circuit Court of Appeals). And, massive public and the media investigations, reports and/or Petitions to the Government (state and federal), and the U.S. Department of Justice, unanimously condemning the nefarious and wanton atrocities committed by said state defendants, intentionally and with reckless indifference and callous disregard for the plaintiffs' federally protected rights,

32. Plaintiffs further allege, that defendants have actual knowledge of such facts but knowingly, designedly and with a guilty conscience denying such

facts (**scienter**). By doing so, defendants are once again trying to convince this court into believing that they did nothing wrong. Plaintiffs allege and prove that defendants, during the past three decades, have been successful in subverting the courts, and presently once again doing all they can to this court with their intentional misrepresentation, falsification and expungement and concealment of material facts, issues, laws and evidence, constituting "crimen falsi" and "acri mala in se".

33. Plaintiffs further allege that by doing so defendants are perpetrating fraud upon this court, mandating an 18 USC S. 1651 indictment against defendants, in the form of an Extra Ordinary Writ, For Order For a Grand Jury Investigation by the prosecutors and the U. S. Justice Department against said defendants and their viciously influential accomplices, lobbyists and judicial junta (crime compounders).

34.

## PRAYOR FOR RELIEF

**Based upon the foregoing facts,** plaintiffs prays for judgement against the defendants identified or to be identified, and each of them jointly, severally and vicariously, in the above causes of action(s), as hereinafter prayed below:

1. For general and compensatory damages according to proof.

2. For actual, demonstrative, special and prospective damages.

3. For Exemplary punitive and preventive damages.

4. For Medical and professional costs and related expenses.

5. For loss of earnings or expectation of earning past and future.

6.  For Costs of suit incurred in these actions, past and future.

7.  For injuries to name, character and reputation (defamation)

8.  For reasonable attorney's fees pursuant to 42 USC S. 1988.

9.  For Costs of suit and the interests as allowed by law.

10. For pain and suffering, and for any other and further relief as
    the court deems fair, equitable and just.

35.

## VERIFICATION

I, AMIR H. SHERVIN, herein declare:

That, I am the principle plaintiff in pro per, in the above entitled action.

That, I have read the foregoing Complaint for Damages and know the
contents Thereof. That, on my own behalf and on my daughter Shirin N.
Shervin' behalf, I herein verify that the same is true and correct of my own
knowledge, except as to those matters which are therein alleged on
information and belief, and as to those matters, I believe it to be true.
This document was executed at the City of Novato, County of Marin, on
July 18, 2008. I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.

Respectfully submitted:

Plaintiffs in pro per, pro se,

Dr. Amir H. Shervin                        Shirin N. Shervin

18

# EXHIBIT C

**DECLARATION OF KIMBERLY BLISS IN SUPPORT OF DEFENDANTS
PETER WALSH AND THE CITY AND COUNTY OF SAN FRANCISCO'S
NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PROCESS
AND SERVICE**

Case 3:08-cv-01634-VRW    Document 41    Filed 09/03/2008    Page 33 of 56

**CITY AND COUNTY
OF SAN FRANCISCO
1996 CHARTER**

**Codified through
June 3, 2008.**

**Preliminaries**

CITY AND COUNTY OF
SAN FRANCISCO
MUNICIPAL CODE

————

1996 CHARTER

————

GRAPHIC LINK:Click here
Published by Municipal Code Corporation
Tallahassee, Florida  2006

CITY AND COUNTY OF SAN FRANCISCO

MUNICIPAL CODE

Charter

Administrative Code

Building and Related Technical Codes

Business and Tax Regulations Code

Campaign and Governmental Conduct Code

Environment Code

Fire Code

Health Code

Municipal Elections Code

Park Code

Planning Code

Police Code

Port Code

Public Works Code

Subdivision Code

Traffic Code

Case 3:08-cv-01631-VRW    Document 41    Filed 09/03/2008    Page 34 of 56

Zoning Maps

PREFACE TO THE

1996 CHARTER

The Charter of the City and County of San Francisco was adopted on November 7, 1995, and became effective July 1, 1996. This volume contains charter provisions enacted through the election of February 2008.

The San Francisco Municipal Code contains ordinances enacted through Ordinance 75-08, File Number 071531, Approved May 9, 2008. A legislative history, containing ordinance number and approval date, is located at the conclusion of most sections. The legislative history of ordinances approved after March 1999 also contain Board of Supervisors file numbers.

## ARTICLE III: EXECUTIVE BRANCH--OFFICE OF MAYOR

Sec. 3.100.  Powers and Responsibilities.
Sec. 3.101.  Term of Office.
Sec. 3.102.  Absence from State or Temporary Disability.
Sec. 3.103.  Veto Power.
Sec. 3.104.  City Administrator.
Sec. 3.105.  Controller; City Services Auditor.

## SEC. 3.100.  POWERS AND RESPONSIBILITIES.

The Mayor shall be the chief executive officer and the official representative of the City and County, and shall serve full time in that capacity. The Mayor shall devote his or her entire time and attention to the duties of the office, and shall not devote time or attention to any other occupation or business activity. The Mayor shall enforce all laws relating to the City and County, and accept service of process on its behalf.

The Mayor shall have responsibility for:

1.  General administration and oversight of all departments and governmental units in the executive branch of the City and County;

2.  Coordination of all intergovernmental activities of the City and County;

3.  Receipt and examination of complaints relating to the administration of the affairs of the City and County, and timely delivery of notice to the complainant of findings and actions taken;

4.  Assurance that appointees to various governmental positions with the City and County are qualified and are as representative of the communities of interest and diverse population of the City and County as is reasonably practicable, and are representative of both sexes;

5.  Submission of ordinances and resolutions by the executive branch for consideration by the Board of Supervisors;

6.  Presentation before the Board of Supervisors of a policies and priorities statement setting forth the Mayor's policies and budget priorities for the City and County for the ensuing fiscal year;

7.  Introduction before the Board of Supervisors of the annual proposed budget or multi-year budget which shall be initiated and prepared by the Mayor. The Mayor shall seek comments and recommendations on the proposed budget from the various commissions, officers and departments; and

8.  Preparation of and introduction to the Board of Supervisors of supplemental appropriations.

The Mayor shall have the power to:

9.  Speak and be heard with respect to any matter at any meeting of the Board of Supervisors or any of its committees, and shall have a seat but no vote on all boards and commissions appointed by the Mayor;

10.  As provided in Section 3.103 of this Charter, veto any ordinance or resolution passed by the Board of Supervisors;

11.  Subject to the fiscal provisions of this Charter and budgetary approval by the Board of Supervisors, appoint such staff as may be needed to perform the duties and carry out the responsibilities of the Mayor's office, provided that no member of the staff shall receive a salary in excess of seventy percent of that paid the Mayor. For purposes of this provision, staff does not include the City Administrator, department heads or employees of departments placed under his or her direction by Section 3.104. Notwithstanding any other provisions or limitations of this Charter to the contrary, the Mayor may not designate nor may the City and County employ on the Mayor's behalf any person to act as deputy to the Mayor or any similar employment classification, regardless of title, whose responsibilities include but are not necessarily limited to supervision of the administration of any department for which the City Administrator, an elected official other than the Mayor or an appointed board or commission is assigned responsibility elsewhere in this Charter;

12.  Designate a member of the Board of Supervisors to act as Mayor in the Mayor's absence from the

state or during a period of temporary disability;

13.  In the case of an emergency threatening the lives, property or welfare of the City and County or its citizens, the Mayor may direct the personnel and resources of any department, command the aid of other persons, and do whatever else the Mayor may deem necessary to meet the emergency;

In  meeting an emergency, the Mayor shall act only with the concurrence of the Board of Supervisors, or a majority of its members immediately available if the emergency causes any member of the Board to be absent. The Mayor shall seek the Board's concurrence as soon as is reasonably possible in both the declaration of an emergency and in the action taken to meet the emergency. Normal notice, posting and agenda requirements of the Board of Supervisors shall not be applicable to the Board's actions pursuant to these provisions;

14.  Make an appointment to fill any vacancy in an elective office of the City and County until a successor shall have been elected;

15.  Subject to the provisions of Charter Section 2.113, submit to the voters a declaration of policy or ordinance on any matter on which the Board of Supervisors is empowered to pass;

16.  Have and exercise such other powers as are provided by this Charter or by law for the chief executive officer of a City and County;

17.  Unless otherwise specifically provided, make appointments to boards and commissions which shall be effective immediately and remain so, unless rejected by a two-thirds vote of the Board of Supervisors within 30 days following transmittal of Notice of Appointment. The Notice of Appointment shall include the appointee's qualifications to serve and a statement how the appointment represents the communities of interest, neighborhoods and diverse populations of the City and County;

18.  Appoint department heads subject to the provisions of this Charter; and

19.  Prepare and submit schedule of rates, fees and other similar charges to the Board of Supervisors.

(Amended by Proposition C, Approved 11/6/2007)


# SEC. 3.101.  TERM OF OFFICE.

The Mayor shall serve a four-year term. No person shall serve as mayor for more than two successive terms. A part of a term that exceeds two years shall count as a full term. There shall be no limit on the non- successive terms that a person may serve.


# SEC. 3.102.  ABSENCE FROM STATE OR TEMPORARY DISABILITY.

If the Mayor is absent from the state or temporarily disabled without designating an Acting Mayor, the President of the Board of Supervisors shall act as Mayor until such time as the Mayor shall return to office.

In case of a disaster in which neither the Mayor nor the President of the Board of Supervisors is able to serve as Mayor, the order of succession shall be as designated by ordinance.

(Amended November 2001)


# SEC. 3.103.  VETO POWER.

Any ordinance or resolution passed by the Board of Supervisors shall be promptly delivered to the Mayor for consideration. If the Mayor approves the ordinance or resolution, the Mayor shall sign it and it shall become effective as provided in Section 2.105 of this Charter. If the Mayor disapproves the ordinance or resolution, the Mayor shall promptly return it to the Board of Supervisors without the Mayor's signature, accompanied by a statement indicating the reasons for disapproval and any recommendations which the Mayor may have. Any ordinance or resolution so disapproved by the Mayor shall become effective only if, subsequent to its return, it shall be passed by a vote of the Board of Supervisors required by Section 2.106 of this Charter. Any ordinance or resolution shall become effective, with or without the Mayor's signature, unless it is disapproved by the Mayor and returned to the Board of Supervisors not more than ten

days after the date the ordinance or resolution was delivered to the Mayor's Office for consideration.

## SEC. 3.104. CITY ADMINISTRATOR.

The Mayor shall appoint or reappoint a City Administrator, subject to confirmation by the Board of Supervisors. The appointee shall have at least ten years' governmental management or finance experience with at least five years at the City, County, or City and County level. The City Administrator shall have a term of office of five years, and may be removed by the Mayor subject to approval by the Board of Supervisors.

The City Administrator shall have responsibility for:

1. Administrative services within the executive branch, as assigned by the Mayor or by ordinance;

2. Administering policies and procedures regarding bonded or other long-term indebtedness, procurement, contracts and building and occupancy permits, and for assuring that all contracts and permits are issued in a fair and impartial manner and that any inspections involved with the issuance of permits shall be carried out in a like manner;

3. Coordinating all capital improvement and construction projects except projects solely under the Airport, Port, Public Utilities and Public Transportation Commissions;

4. Preparing and recommending bond measures for consideration by the Mayor and Board of Supervisors; and

5. Administering, budgeting and control of publicity and advertising expenditures.

The City Administrator shall have power to:

6. With the concurrence of the Mayor, appoint and remove the directors of the Departments of Administrative Services, Solid Waste, Public Guardian/Administrator, and Public Works, and such other department heads which are placed under his or her direction;

7. Propose rules governing procurement and contracts to the Board of Supervisors for consideration;

8. Award contracts without interference from the Mayor or Board of Supervisors; and

9. Coordinate the issuance of bonds and notes for capital improvements, equipment and cash flow borrowings, except for projects solely under the Airport, Port, Public Utilities and Public Transportation Commissions.

In those instances where contract awards are not subject to Board of Supervisors' review, the City Administrator shall award contracts in full compliance with applicable laws and this Charter. The City Administrator's decision in such cases shall be final.

## SEC. 3.105. CONTROLLER; CITY SERVICES AUDITOR.

The Mayor shall appoint or reappoint a Controller for a ten-year term, subject to confirmation by the Board of Supervisors. The Controller may only be removed by the Mayor for cause, with the concurrence of the Board of Supervisors by a two-thirds vote.

The Controller shall be responsible for the timely accounting, disbursement or other disposition of monies of the City and County in accordance with sound financial practices applicable to municipalities and counties. The Controller shall have the power and duties of a County auditor, except as otherwise provided in this Charter. The Controller shall have authority to audit the accounts and operations of all boards, commissions, officers and departments to evaluate their effectiveness and efficiency. The Controller shall have access to, and authority to, examine all documents, records, books and other property of any board, commission, officer or department.

The Controller shall also serve as City Services Auditor for the City and County. As City Services Auditor, the Controller shall be responsible for monitoring the level and effectiveness of services rendered by the City to its residents, as set forth in Appendix F to this Charter.

Should the Controller determine at any time during the fiscal year that the revenues of the General Fund, or any special, sequestered or other fund are insufficient or appear to be insufficient to support the remaining anticipated

Case 3:08-cv-01621-VRW   Document 41   Filed 09/03/2008   Page 38 of 56

expenditure from that fund for the fiscal year for any department, function or program, the Controller shall reduce or reserve all or a portion of the expenditure appropriation until such time as the Controller determines that the anticipated revenues for the remainder of that fiscal year are sufficient to support the level of expenditure anticipated for the remainder of the fiscal year. Whenever the Controller makes a reduction or reservation, the Controller shall so inform the Mayor and Board of Supervisors within 24 hours.

The Controller shall exercise general supervision over the accounts of all officers, commissions, boards and employees of the City and County charged in any manner with the receipt, collection or disbursement of City and County funds or other funds, in their capacity as City and County officials or employees. The Controller shall establish accounting records, procedures and internal controls with respect to all financial transactions of the City and County. Such records, procedures and controls shall permit the financial statements of the City and County to be prepared in conformity with generally accepted accounting principles applicable to municipalities and counties.

The Controller shall within 150 days of the end of each fiscal year prepare an annual report of the financial condition of the City and County. Such annual report shall be prepared in accordance with generally accepted accounting principles. The annual report shall contain such information and disclosures as shall be necessary to present to the public a full and understandable report of all City and County financial activity.

The Controller shall prepare an impartial financial analysis of each City and County ballot measure which shall include the amount of any increase or decrease in the cost of government of the City and County and its effect upon the cost of government. Such analysis shall be issued in sufficient time to permit inclusion in the voters' pamphlet.

The Controller shall issue from time to time such periodic or special financial reports as may be requested by the Mayor or Board of Supervisors.

All disbursements of funds in the custody of the Treasurer must be authorized by the Controller. No officer or employee shall bind the City and County to expend money unless there is a written contract or other instrument and unless the Controller shall certify that sufficient unencumbered balances are available in the proper fund to meet the payments under such contract or other obligation as these become due.

(Amended November 2003)

Case 3:08-cv-04621-VRW   Document 41   Filed 09/03/2008   Page 39 of 56

## ARTICLE IV:  EXECUTIVE BRANCH--BOARDS, COMMISSIONS AND DEPARTMENTS

Sec. 4.100.  General.
Sec. 4.101.  Boards and Commissions--Composition.
Sec. 4.101.5.  Hold-Over Service by Board and Commission Members.
Sec. 4.102.  Boards and Commissions--Powers and Duties.
Sec. 4.103.  Boards and Commissions--Annual Report.
Sec. 4.104.  Boards and Commissions--Rules and Regulations.
Sec. 4.105.  Planning Commission.
Sec. 4.106.  Board of Appeals.
Sec. 4.107.  Human Rights Commission.
Sec. 4.108.  Fire Commission.
Sec. 4.109.  Police Commission.
Sec. 4.110.  Health Commission.
Sec. 4.111.  Human Services Commission.
Sec. 4.112.  Public Utilities Commission.
Sec. 4.113.  Recreation and Park Commission.
Sec. 4.114.  Port Commission.
Sec. 4.115.  Airport Commission.
Sec. 4.116.  Parking and Traffic Commission.
Sec. 4.117.  Entertainment Commission.
Sec. 4.118.  Commission on the Environment.
Sec. 4.119.  Commission on the Status of Women.
Sec. 4.120.  Commission on Aging.
Sec. 4.121.  Building Inspection Commission.
Sec. 4.122.  Youth Commission.
Sec. 4.123.  Youth Commission Membership; Appointment; Terms; Meetings; Compensation; Director.
Sec. 4.124.  Youth Commission--Purpose and Duties.
Sec. 4.125.  Jurisdiction.
Sec. 4.126.  Departments--General Provisions.
Sec. 4.127.  Police Department.
Sec. 4.128.  Fire Department.
Sec. 4.129.  Department of Administrative Services.
Sec. 4.130.  Department of Public Works.
Sec. 4.131.  County Clerk.
Sec. 4.132.  Executive Branch Reorganization.
Sec. 4.133.  Taxi Commission.
Sec. 4.134.  Small Business Commission.

## SEC. 4.100.  GENERAL.

In addition to the office of the Mayor, the executive branch of the City and County shall be composed of departments, appointive boards, commissions and other units of government. To the extent law permits, each appointive board, commission, or other unit of government of the City and County established by state or federal law shall be subject to the provisions of this Article and this Charter.

## SEC. 4.101.  BOARDS AND COMMISSIONS--COMPOSITION.

Unless otherwise provided in this Charter, the composition of each appointive board, commission or advisory body of any kind established by this Charter or legislative act of the United States of America, the State of California or the Board of Supervisors shall:

    1.   Be broadly representative of the communities of interest, neighborhoods, and the diversity in ethnicity, race, age, and sexual orientation of the City and County and have representation of both sexes; and

    2.   Consist of electors of the City and County at all times during the term of their respective offices, unless otherwise specifically provided in this Charter; or in the case of boards, commissions or advisory bodies established by legislative act the position is (a) designated by ordinance for a person under legal voting age, or (b) unless specifically exempt from the provisions, or waived by the appointing officer or entity upon a finding that an elector with specific experience, skills or qualifications willing to serve could not be located within the City and County.

Vacancies on appointive boards, commissions or other units of government shall be filled for the balance of the

Case 3:08-cv-01621-VRW   Document 11   Filed 09/03/2008   Page 40 of 56

unexpired term in the manner prescribed by this Charter or ordinance for initial appointments.

Terms of office shall continue as they existed on the effective date of this Charter.

## SEC. 4.101.5. HOLD-OVER SERVICE BY BOARD AND COMMISSION MEMBERS.

(a)  Application of this Section. Unless otherwise provided in this Charter or required by law, the requirements of this Section shall apply to the members of each appointive board, commission, or other unit of government of the executive branch of the City and County or otherwise created in the Charter ("Charter Commission"). Citizen advisory committees created in the Charter shall not be considered Charter Commissions for purposes of this Section. The provisions of this Section shall not apply to boards or commissions created in Article V (Executive Branch--Arts and Culture) or Article XII (Employee Retirement and Health Service Systems) of this Charter.

(b)  Limitations on Hold-Over-Service. Except as otherwise provided in this Charter, the tenure of a member of any Charter Commission shall terminate no later than 60 days after the expiration of the member's term, unless the member is re-appointed. A member may not serve as a hold-over member of a Charter Commission for more than 60 days after the expiration of his or her term. The tenure of any person sitting as a hold-over member on the effective date of this amendment shall terminate no later than 60 days after the effective date of this amendment.

(Added by Proposition B, Approved 11/6/2007)

## SEC. 4.102. BOARDS AND COMMISSIONS--POWERS AND DUTIES.

Unless otherwise provided in this Charter, each appointive board, commission or other unit of government of the executive branch of the City and County shall:

1.  Formulate, evaluate and approve goals, objectives, plans and programs and set policies consistent with the overall objectives of the City and County, as established by the Mayor and the Board of Supervisors through the adoption of City legislation;

2.  Develop and keep current an Annual Statement of Purpose outlining its areas of jurisdiction, authorities, purpose and goals, subject to review and approval by the Mayor and the Board of Supervisors;

3.  After public hearing, approve applicable departmental budgets or any budget modifications or fund transfers requiring the approval of the Board of Supervisors, subject to the Mayor's final authority to initiate, prepare and submit the annual proposed budget on behalf of the executive branch and the Board of Supervisors' authority under Section 9.103;

4.  Recommend to the Mayor for submission to the Board of Supervisors rates, fees and similar charges with respect to appropriate items coming within their respective jurisdictions;

5.  Unless otherwise specifically provided, submit to the Mayor at least three qualified applicants, and if rejected, to make additional nominations in the same manner, for the position of department head, subject to appointment by the Mayor;

6.  Remove a department head; the Mayor may recommend removal of a department head to the commission, and it shall be the commission's duty to act on the Mayor's recommendation by removing or retaining the department head within 30 days; failure to act on the Mayor's recommendation shall constitute official misconduct;

7.  Conduct investigations into any aspect of governmental operations within its jurisdiction through the power of inquiry, and make recommendations to the Mayor or the Board of Supervisors;

8.  Exercise such other powers and duties as shall be prescribed by the Board of Supervisors; and

9.  Appoint an executive secretary to manage the affairs and operations of the board or commission.

In furtherance of the discharge of its responsibilities, an appointive board, commission or other unit of government may:

10.  Hold hearings and take testimony; and

11.  Retain temporary counsel for specific purposes, subject to the consent of the Mayor and the City Attorney.

Each board or commission, relative to the affairs of its own department, shall deal with administrative matters solely through the department head or his or her designees, and any dictation, suggestion or interference herein prohibited on the part of any member of a board or commission shall constitute official misconduct; provided, however, that nothing herein contained shall restrict the board or commission's powers of hearing and inquiry as provided in this Charter.

## SEC. 4.103.  BOARDS AND COMMISSIONS--ANNUAL REPORT.

As of the operative date of this Charter and until this requirement is changed by the Board of Supervisors, each board and commission of the City and County shall be required by ordinance to prepare an annual report describing its activities, and shall file such report with the Mayor and the Clerk of the Board of Supervisors. The Annual Report can be included in the Annual Statement of Purpose as provided for in Section 4.102(2).

## SEC. 4.104.  BOARDS AND COMMISSIONS--RULES AND REGULATIONS.

(a)  Unless otherwise provided in this Charter, each appointive board, commission or other unit of government of the executive branch of the City and County shall:

1.  Adopt rules and regulations consistent with this Charter and ordinances of the City and County. No rule or regulation shall be adopted, amended or repealed, without a public hearing. At least ten days' public notice shall be given for such public hearing. All such rules and regulations shall be filed with the Clerk of the Board of Supervisors.

2.  Hold meetings open to the public and encourage the participation of interested persons. Except for the actions taken at closed sessions, any action taken at other than a public meeting shall be void. Closed sessions may be held in accordance with applicable state statutes and ordinances of the Board of Supervisors.

3.  Keep a record of the proceedings of each regular or special meeting. Such record shall indicate how each member voted on each question. These records, except as may be limited by state law or ordinance, shall be available for public inspection.

(b)  The presence of a majority of the members of an appointive board, commission or other unit of government shall constitute a quorum for the transaction of business by such body. The term "presence" shall include participation by teleconferencing or other electronic means as authorized by Government Code Section 54953(b) or any successor legislation after the Board of Supervisors has adopted an ordinance pursuant to subsection (c) allowing such participation when the member is physically unable to attend in person, as certified by a health care provider, due to the member's pregnancy, childbirth, or related condition. The Board of Supervisors may also, as part of a parental leave policy adopted pursuant to subsection (c), authorize a member of a board or commission to participate in meetings by teleconferencing or other electronic means when the member is absent to care for his or her child after birth of the child, or after placement of the child with the member or the member's immediate family for adoption or foster care. Unless otherwise required by this Charter, the affirmative vote of a majority of the members shall be required for the approval of any matter, except that the rules and regulations of the body may provide that, with respect to matters of procedure the body may act by the affirmative vote of a majority of the members present, so long as the members present constitute a quorum. All appointive boards, commissions or other units of government shall act by a majority, two-thirds, three-fourths or other vote of all members. Each member present at a regular or special meeting shall vote "yes" or "no" when a question is put, unless excused from voting by a motion adopted by a majority of the members present.

(c)  Notwithstanding the provisions of Charter Section 10.101, the Board of Supervisors shall provide by ordinance for parental leave policies for members of appointive boards, commissions or other units of government, including, but not limited to, authorization to participate in meetings by teleconferencing or other electronic means pursuant to subsection (b) and subject to the restrictions listed in that subsection.

(Amended by Proposition B, Approved 11/7/2006)

## SEC. 4.105. PLANNING COMMISSION.

GENERAL. The Planning Commission shall consist of seven members nominated and appointed pursuant to this section. Four of the members shall be nominated by the Mayor, and three of the members shall be nominated by the President of the Board of Supervisors. Charter Section 4.101 shall apply to these appointments, with particular emphasis on the geographic diversity of City neighborhoods. Vacancies shall be filled by the appointing officer.

Each nomination of the Mayor and the President of the Board of Supervisors is subject to approval by the Board of Supervisors, and shall be the subject of a public hearing and vote within 60 days. If the Board fails to act on the nomination within 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors, the nominee shall be deemed approved. The appointment shall become effective on the date the Board adopts a motion approving the nomination or after 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors.

Members may be removed by the appointing officer only pursuant to Section 15.105.

In order to stagger the terms, three members shall initially serve two-year terms, and four members shall initially service four-year terms. The initial two and four-year terms of office shall be instituted as follows:

1.  The respective terms of office of members of the Planning Commission who hold office on the first day of July, 2002, shall expire at 12 o'clock noon on that date, and the four members appointed by the Mayor and the three members appointed by the President of the Board of Supervisors shall succeed to said offices at that time.

2.  The Clerk of the Board of Supervisors shall determine by lot which two of the four Mayoral appointees shall serve an initial two-year term, and which one of the three appointees of the President of the Board of Supervisors shall serve an initial two-year term. The remaining appointees shall serve four-year terms. All subsequent terms shall be four years.

The Commission shall provide the Mayor with at least three qualified candidates for Director of Planning, selected on the basis of administrative and technical qualifications, with special regard for experience, training and knowledge in the field of City planning.

The Commission may contract with consultants for such services as it may require subject to the fiscal provisions of this Charter.

GENERAL PLAN. The Commission shall periodically recommend to the Board of Supervisors for approval or rejection proposed amendments to the General Plan. If the Board of Supervisors fails to act within 90 days of receipt, the proposed General Plan or amendments shall be deemed approved. The General Plan which will initially consist of the Master Plan in effect immediately prior to the effective date of this Charter shall consist of goals, policies and programs for the future physical development of the City and County that take into consideration social, economic and environmental factors. In developing their recommendations, the Commission shall consult with commissions and elected officials, and shall hold public hearings as part of a comprehensive planning process. The Planning Department, in consultation with other departments and the City Administrator, shall periodically prepare special area, neighborhood and other plans designed to carry out the General Plan, and periodically prepare implementation programs and schedules which link the General Plan to the allocation of local, state and federal resources. The Planning Department may make such other reports and recommendations to the Mayor, Board of Supervisors and other offices and governmental units as it may deem necessary to secure understanding and a systematic effectuation of the General Plan.

In preparing any plans, the Planning Department may include plans for systems and areas within the Bay Region which have a planning relationship with the City and County.

REFERRAL OF CERTAIN MATTERS. The following matters shall, prior to passage by the Board of Supervisors, be submitted for written report by the Planning Department regarding conformity with the General Plan:

1.  Proposed ordinances and resolutions concerning the acquisition or vacation of property by, or a change in the use or title of property owned by, the City and County;

2.  Subdivisions of land within the City and County;

3.  Projects for the construction or improvement of public buildings or structures within the City and County;

    4.  Project plans for public housing, or publicly assisted private housing in the City and County;

    5.  Redevelopment project plans within the City and County; and

    6.  Such other matters as may be prescribed by ordinance.

The Commission shall disapprove any proposed action referred to it upon a finding that such action does not conform to the General Plan. Such a finding may be reversed by a vote of two-thirds of the Board of Supervisors.

All such reports and recommendations shall be issued in a manner and within a time period to be determined by ordinance.

PERMITS AND LICENSES. All permits and licenses dependent on, or affected by, the City Planning Code administered by the Planning Department shall be approved by the Commission prior to issuance. The Commission may delegate this approval function to the Planning Department.

ENFORCEMENT. The Planning Department shall administer and enforce the City Planning Code.

ZONING AMENDMENTS. The Commission may propose for consideration by the Board of Supervisors ordinances regulating or controlling the height, area, bulk, set-back, location, use or related aspects of any building, structure or land. An ordinance proposed by the Board of Supervisors concerning zoning shall be reviewed by the Commission. Applications for the reclassification of property may be made by interested parties and must be reviewed by the Commission.

Notwithstanding the Commission's disapproval of a proposal from Board of Supervisors or the application of interested parties, the Board of Supervisors may adopt the proposed ordinance; however, in the case of any proposal made by the application of interested parties, any such adoption shall be by a vote of not less than two-thirds of the Board of Supervisors.

No application of interested parties proposing the same or substantially the same ordinance as that disapproved by the Commission or by the Board of Supervisors shall be resubmitted to or reconsidered by the Commission within a period of one year from the effective date of final action upon the earlier application.

ZONING ADMINISTRATOR. The director of planning shall appoint a Zoning Administrator from a list of qualified applicants provided pursuant to the Civil Service provisions of the Charter. The Zoning Administrator shall be responsible for the determination of all zoning variances. The administrator shall have the power to grant only those variances that are consistent with the general purpose and the intent of the zoning ordinance, and in accordance with the general and specific rules of the zoning ordinance, subject to such conditions and safeguards as the Zoning Administrator may impose. The power to grant variances shall be applied only when the plain and literal interpretation and enforcement of the zoning ordinance would result in practical difficulties, unnecessary hardships or where the results would be inconsistent with the general purpose of the zoning ordinance. Decisions of the Zoning Administrator regarding zoning variances may be appealed to the Board of Appeals.

Before any such variance may be granted, there shall appear, and the Zoning Administrator shall specify in his or her findings, the facts in each case which shall establish:

    (a)  That there are exceptional or extraordinary circumstances or conditions applying to the property involved or to the intended use of the property that do not apply generally to the property or class of uses in the same district or zone;

    (b)  That owing to such exceptional or extraordinary circumstances the literal enforcement of the zoning ordinance would result in practical difficulty or unnecessary hardship not created by or attributable to the applicant or the owner of the property;

    (c)  That such variance is necessary for the preservation and enjoyment of a substantial property right of the applicant, possessed by other property in the same zone and vicinity;

    (d)  That the granting of the variance will not be materially detrimental to the public welfare or injurious to the property or improvements in such zone or district in which the property is located; and

    (e)  That the granting of such variance will be in harmony with the general purpose and intent of the zoning ordinance and will not adversely affect the general plan.

The determination of the Zoning Administrator shall be final except that appeals therefrom may be taken, as hereinafter provided, to the Board of Appeals, exclusively and notwithstanding any other provisions of this Charter, by any person aggrieved or by any office, agency, or department of the City and County. An appeal from a determination of

Case 3:08-cv-04621-VRW   Document 41   Filed 09/03/2008   Page 44 of 56

the Zoning Administrator shall be filed with the Board of Appeals within ten days from the date of such determination. Upon making a ruling or determination upon any matter under his or her jurisdiction, the Zoning Administrator shall thereupon furnish a copy thereof to the applicant and to the Director of Planning. No variance granted by the Zoning Administrator shall become effective until ten days thereafter. An appeal shall stay all proceedings in furtherance of the action appealed from.

CONDITIONAL USE. The Commission shall have the power to hear and decide conditional use applications. An appeal may be taken to the Board of Supervisors from a decision of the Commission to grant or deny a conditional use application. The Board of Supervisors may disapprove the decision of the Commission by a vote of not less than two-thirds of the members of the Board.

(Amended March 2002)


## SEC. 4.106. BOARD OF APPEALS.

(a)   The Board of Appeals shall consist of five members nominated and appointed pursuant to this section. Three of the members shall be nominated by the Mayor, and two of the members shall be appointed by the President of the Board of Supervisors. Charter Section 4.101 shall apply to these appointments. Vacancies shall be filled by the appointing officer.

Each nomination of the Mayor and the President of the Board of Supervisors is subject to approval by the Board of Supervisors, and shall be the subject of a public hearing and vote within 60 days. If the Board fails to act on the nomination within 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors, the nominee shall be deemed approved. The appointment shall become effective on the date the Board adopts a motion approving the nomination or after 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors.

Members may be removed by the appointing officer only pursuant to Section 15.105.

In order to stagger the terms, three members shall initially serve two-year terms, and two members shall initially service four-year terms. The initial two and four-year terms of office shall be instituted as follows:

1.   The respective terms of office of members of the Board of Appeals who hold office on the first day of July, 2002, shall expire at 12 o'clock noon on that date, and the three members appointed by the Mayor and the two members appointed by the President of the Board of Supervisors shall succeed to said offices at that time.

2.   The clerk of the Board of Supervisors shall determine by lot which two of the three Mayoral appointees shall serve an initial two-year term, and which one of the two appointees of the President of the Board of Supervisors shall serve an initial two-year term. The remaining appointees shall serve four-year terms. All subsequent terms shall be four years.

The Board shall appoint and may remove an executive secretary, who shall serve as department head.

(b)   The Board shall hear and determine appeals with respect to any person who has been denied a permit or license, or whose permit or license has been suspended, revoked or withdrawn, or who believes that his or her interest or the public interest will be adversely affected by the grant, denial, suspension or revocation of a license or permit, except for a permit or license under the jurisdiction of the Recreation and Park Commission or Department, or the Port Commission, or a building or demolition permit for a project that has received a permit or license pursuant to a conditional use authorization.

(c)   The Board of Appeals shall hear and determine appeals:

1.   Where it is alleged there is error or abuse of discretion in any order, requirement, decision or determination made by the Zoning Administrator in the enforcement of the provisions of any ordinance adopted by the Board of Supervisors creating zoning districts or regulating the use of property in the City and County; or

2.   From the rulings, decisions and determinations of the Zoning Administrator granting or denying applications for variances from any rule, regulation, restriction or requirement of the zoning or set-back ordinances, or any section thereof. Upon the hearing of such appeals, the Board may affirm, change, or modify the ruling, decision or determination appealed from, or, in lieu thereof, make such other additional determinations as it shall deem proper in the premises, subject to the same limitations as are placed upon the Zoning Administrator by this Charter or by ordinance.

Case 3:08-cv-01631-VRW    Document 41    Filed 09/03/2008    Page 45 of 56

(d)  After a hearing and any necessary investigation, the Board may concur in the action of the department involved, or by the affirmative vote of four members (or if a vacancy exists, by a vote of three members) overrule the action of the Department.

Where the Board exercises its authority to modify or overrule the action of a department, the Board shall state in summary its reasons in writing.

(Amended March 2002)


## SEC. 4.107.  HUMAN RIGHTS COMMISSION.

The Human Rights Commission shall consist of eleven members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor.

The Commission shall:

1.  Investigate complaints of unlawful discrimination against any person;

2.  Ensure the civil rights of all persons;

3.  Ensure that the affirmative action plans of each department of the City and County are current and are being properly implemented; and report on the implementation of such affirmative action plans to the Mayor and Board of Supervisors;

4.  Promote understanding among the residents of the City and County and work cooperatively with governmental agencies, community group and others to eliminate discrimination and the results of past discrimination by furnishing information, guidance and technical assistance;

5.  Study, investigate, mediate and make recommendations with respect to the solving of community-wide problems resulting in intergroup tensions and discrimination;

6.  Implement the provisions of ordinances prohibiting discrimination in all contracts and subsequent subcontracts, franchises, leases, concessions or other agreements for or on behalf of the City and County; and

7.  Issue such rules and regulations for the conduct of its business, and prepare such ordinances with respect to human rights for consideration by the Board of Supervisors as are necessary to carry out the purposes of this section.

In performing its duties, the Commission may hold hearings, issue subpoenas to require witnesses to appear and require the production of evidence, administer oaths, take testimony and issue appropriate orders and petitions for court orders in such manner as may be prescribed by law.


## SEC. 4.108.  FIRE COMMISSION.

The Fire Commission shall consist of five members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor. In addition to any other powers set forth in this Charter, the Fire Commission is empowered to prescribe and enforce any reasonable rules and regulations that it deems necessary to provide for the efficiency of the Department, provided that the civil service and ethics provisions of this Charter shall control in the event of any conflict with rules adopted under this section.

(Amended November 2003)


## SEC. 4.109.  POLICE COMMISSION.

The Police Commission shall consist of seven members appointed pursuant to this section. The Mayor shall nominate four members to the commission, at least one of whom shall be a retired judge or an attorney with trial experience. The Rules Committee of the Board of Supervisors, or any successor committee thereto, shall nominate three other members to the commission. Each nomination shall be subject to confirmation by the Board of Supervisors, and the Mayor's nominations shall be the subject of a public hearing and vote within 60 days. If the Board of Supervisors

rejects the Mayor's nomination to fill the seat designated for a retired judge or attorney with trial experience, the Mayor shall nominate a different person with such qualifications. If the Board of Supervisors fails to act on a mayoral nomination within 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors, the nominee shall be deemed confirmed. Appointments to fill a vacancy on the commission shall become operative on the date the Board of Supervisors adopts a motion confirming the nomination, or on the 61st day following the date a mayoral nomination is transmitted to the Clerk of the Board of Supervisors if the Board of Supervisors fails to vote on the nomination prior to such date. Confirmations of nominations to fill a vacancy that will be created upon the expiration of a sitting member's term shall become operative upon the expiration of the sitting member's term, or, if the Board of Supervisors fails to act on a mayoral nomination to fill such anticipated vacancy, on the 61st day following the date the nomination was transmitted to the Clerk of the Board of Supervisors or on the expiration of the sitting member's term, whichever occurs later. The terms and tenures of all members sitting on the commission as of the effective date of the amendments to this section approved at the November 2003 election shall terminate at 12 noon on April 30, 2004. To stagger the terms of the seven members thereafter, of the first four members nominated by the Mayor, two members shall serve terms of two years and two members shall serve terms of four years, and of the three members nominated by the Rules Committee, one member shall serve a term of one year, one member shall serve a term of two years, and one member shall serve a term of three years. The Clerk of the Board of Supervisors shall designate such initial terms by lot. All subsequent appointments to the commission shall be for four-year terms.

The tenure of each member shall terminate upon the expiration of the member's term. The Mayor shall transmit a nomination or renomination to the Clerk of the Board of Supervisors no later than 60 days prior to the expiration of the term of a member nominated by the Mayor. For vacancies occurring for reasons other than the expiration of a member's term, within 60 days following the creation of such vacancy, the Mayor shall nominate a member to fill such vacancy if the vacancy is for a seat filled by nomination of the Mayor.

The District Attorney, Sheriff and Public Defender may recommend persons to the Mayor and Board of Supervisors for nomination or appointment to the Police Commission.

The Mayor, with the consent of the Board of Supervisors, may remove a member the Mayor has nominated. The Board of Supervisors may remove a member the Rules Committee has nominated.

Notwithstanding any other provision of the Charter, the Chief of Police may be removed by the Commission or the Mayor, acting jointly or separately of each other. In addition to any other powers set forth in this Charter, the Police Commission is empowered to prescribe and enforce any reasonable rules and regulations that it deems necessary to provide for the efficiency of the Department, provided that the civil service and ethics provisions of this Charter shall control in the event of any conflict with rules adopted under this section.

(Amended November 2003)


# SEC. 4.110. HEALTH COMMISSION.

The Health Commission shall consist of seven members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. The Commission shall have less than a majority of direct care providers. Members may be removed by the Mayor only pursuant to Section 15.105. The Commission shall control the property under its jurisdiction.

The Commission and the Department shall manage and control the City and County hospitals, emergency medical services, and in general provide for the preservation, promotion and protection of the physical and mental health of the inhabitants of the City and County, except where the Charter grants such authority to another officer or department. The Commission and the Department may also determine the nature and character of public nuisances and provide for their abatement.


# SEC. 4.111. HUMAN SERVICES COMMISSION.

The Human Services Commission shall consist of five members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor only pursuant to Section 15.105.


# SEC. 4.112. PUBLIC UTILITIES COMMISSION.

(a) The Public Utilities Commission shall consist of five members appointed by the Mayor, subject to

Case 3:08-cv-04621-VRW   Document 41   Filed 09/03/2008   Page 47 of 56

confirmation by a majority of the Board of Supervisors. Each of the members shall serve for a term of four years. Members may be removed by the Mayor only pursuant to Section 15.105.

(b)  Seat 1 on the Commission shall be a member with experience in environmental policy and an understanding of environmental justice issues. Seat 2 shall be a member with experience in ratepayer or consumer advocacy. Seat 3 shall be a member with experience in project finance. Seat 4 shall be a member with expertise in water systems, power systems, or public utility management. And Seat 5 shall be an at-large member.

(c)  The respective terms of office of members of the Public Utilities Commission who old office on August 1, 2008 shall expire at noon on that date, and the members appointed pursuant to the amendments to this Section approved at the June 2008 election shall succeed to said office at that time. In order to provide for staggered terms, the members appointed to Seats 2 and 4 shall serve for an initial term of two years from August 1, 2008. The remaining three members appointed to Seats 1, 3, and 5 shall serve for an initial term of four years from August 1, 2008, and thereafter the terms of all members shall be four years.

(d)  The Commission shall have charge of the construction, management, supervision, maintenance, extension, operation, use and control of all water and energy supplies and utilities of the City as well as the real, personal and financial assets, which are under the Commission's jurisdiction on the operative date of this Charter, or assigned pursuant to Section 4.132.

(Amended by Proposition E, Election 6/3/2008)


# SEC. 4.113.  RECREATION AND PARK COMMISSION.

The Recreation and Park Commission shall consist of seven members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor only pursuant to Section 15.105.

Pursuant to the policies and directives set by the Commission and under the direction and supervision of the General Manager, the Recreation and Park Department shall manage and direct all parks, playgrounds, recreation centers and all other recreation facilities, avenues and grounds under the Commission's control or placed under its jurisdiction thereafter, unless otherwise specifically provided in this Charter.

The Department shall promote and foster a program providing for organized public recreation of the highest standard.

The Department shall issue permits for the use of all property under the Commission's control, pursuant to the policies established by the Commission.

As directed by the Commission, the Department shall administer the Park, Recreation and Open Space Fund pursuant to Section 16.107 of this Charter.

The Department shall have the power to construct new parks, playgrounds, recreation centers, recreation facilities, squares and grounds, and to erect and maintain buildings and structures on parks, playgrounds, square, avenues and grounds, except as follows:

1.  No building or structure, except for nurseries, equipment storage facilities and comfort stations, shall be erected, enlarged or expanded in Golden Gate Park or Union Square Park unless such action has been approved by a vote of two-thirds of the Board of Supervisors;

2.  No park land may be sold or leased for non-recreational purposes, nor shall any structure on park property be built, maintained or used for non-recreational purposes, unless approved by a vote of the electors. However, with permission of the Commission and approval by the Board of Supervisors, subsurface space under any public park, square or playground may be used for the operation of a public automobile parking station under the authority of the Department of Parking and Traffic, provided that the Commission determines that such a use would not be, in any material respect or degree, detrimental to the original purpose for which a park, square or playground was dedicated or in contravention of the conditions of any grant under which a park, square or playground might have been received. The revenues derived from any such use, less the expenses incurred by the Department of Parking and Traffic in operating these facilities, shall be credited to Recreation and Park Department funds.

3.  The Commission shall have the power to lease or rent any stadium or recreation field under its jurisdiction for athletic contests, exhibitions and other special events and may permit the lessee to charge an admission fee.

Case 3:08-cv-01061-VRW   Document 41   Filed 09/03/2008   Page 48 of 56

(Amended March 2000)


## SEC. 4.114.  PORT COMMISSION.

The Port Commission shall consist of five members who shall be appointed by the Mayor, subject to confirmation by a majority of the Board of Supervisors. Each of the members shall serve for a term of four years. They shall be subject to recall, suspension and removal in the same manner as an elected official.

The Commission shall have the composition and organization, and the powers, duties and responsibilities with respect to the Port that are set forth in the Burton Act, Statutes of 1968, Chapter 1333, as amended, and in the Agreement Relating to the Transfer of the Port of San Francisco from the State of California to the City and County, executed on the 24th day of January 1969.

The Commission shall be subject to the provisions of Sections 4.101 through 4.103 of this Charter, so far as those powers and duties are not inconsistent with the Burton Act and the Transfer Agreement as they are referred to in the above paragraph.


## SEC. 4.115.  AIRPORT COMMISSION.

The Airport Commission shall consist of five members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor only pursuant to Section 15.105.

The Commission shall provide the Mayor with at least three qualified candidates for Director of Airports, related on the basis of executive, administrative and technical qualifications.

The Commission shall have charge of the construction, management, supervision, maintenance, extension, operation, use and control of all property, as well as the real, personal and financial assets which are under the Commission's jurisdiction.

Subject to the approval, amendment or rejection of the Board of Supervisors of each issue, the Commission shall have exclusive authority to plan and issue revenue bonds for airport-related purposes.


## SEC. 4.116.  PARKING AND TRAFFIC COMMISSION.

The Parking and Traffic Commission shall consist of five members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor.

If not in conflict with state law, members of the Commission, or its successor, shall serve ex officio as members of the Parking Authority. Any person may serve concurrently as a member of the Parking Authority and the Parking and Traffic Commission. The Commission shall control all property under its jurisdiction.

**Editor's note:**  Proposition E, adopted November 2, 1999, enacted Charter Sec. 8A.112, and repealed this Charter Section 4.116, to become effective July 1, 2002.


## SEC. 4.117.  ENTERTAINMENT COMMISSION.

The San Francisco Entertainment Commission shall consist of seven members nominated and appointed pursuant to this section. The Mayor shall nominate four members to the commission, and the Board of Supervisors shall appoint, by motion, three other members to the commission. Each nomination of the Mayor shall be subject to approval by the Board of Supervisors, and shall be the subject of a public hearing and vote within 60 days. If the Board of Supervises fails to act on a mayoral nomination within 60 days of the date the nomination is transmitted to the Clerk of the Board of Supervisors, the nominee shall be deemed approved. Appointments to the commission shall become effective on the date the Board of Supervisors adopts a motion approving the nomination or on the 61st day following the date the mayoral nomination was transmitted to the Clerk of the Board of Supervisors if the Board of Supervisors fails to act upon the nomination prior to such date.

Of the four members nominated by the Mayor, the Mayor shall nominate one member to represent the interests of

City neighborhood associations or groups, one member to represent the interests of entertainment associations or groups, one member to represent the interests of the urban planning community, and one member to represent the interests of the law enforcement community. Of the three members of the commission appointed by the Board of Supervisors, one member shall represent the interests of City neighborhood associations or groups, one member shall represent the interests of entertainment associations or groups, and one member shall represent the interests of the public health community.

To stagger the terms of the members, the initial appointments to the commission shall be as follows: the Mayor shall nominate two members to serve terms of four years, one member to serve a term of three years, and one member to serve a term of two years. Of the three remaining members of the commission, the Board of Supervisors shall appoint one member to serve a term of four years, one member to serve a term of three years, and one member to serve a term of two years. Except for appointments to fill a vacancy, all subsequent appointments shall be for a term of four years.

Members of the commission nominated by the Mayor may be suspended by the Mayor and removed by the Board of Supervisors only as set forth in Section 15.105. Members of the commission appointed directly by the Board of Supervisors may be suspended by a motion of the Board of Supervisors approved by six votes and may be removed by the Board of Supervisors only as set forth in Section 15.105.

(Added November 2002)


## SEC. 4.118. COMMISSION ON THE ENVIRONMENT.

The Commission on the Environment shall consist of seven members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor.

The Department of the Environment shall regularly produce an assessment of San Francisco's environmental condition. It shall also produce and regularly update plans for the long-term environmental sustainability of San Francisco.

Pursuant to the policies and directives set by the Commission, and under the supervision and direction of the department head, the Department shall manage the environmental programs, duties and functions assigned to it pursuant to Section 4.132 or by ordinance.

The Commission shall have the authority to review and make recommendations on any policy proposed for adoption by any City agency regarding conformity with the long-term plans for environmental sustainability, except for those regarding building and land use.

The Commission may investigate and make recommendations to all City agencies related to operations and functions, such as:

1. Solid waste management;
2. Recycling;
3. Energy conservation;
4. Natural resource conservation;
5. Environmental inspections;
6. Toxics;
7. Urban forestry and natural resources;
8. Habitat restoration; and
9. Hazardous materials.

The Commission shall conduct public education and outreach to the community on environmental issues, including, but not limited to each of the categories listed above.


## SEC. 4.119. COMMISSION ON THE STATUS OF WOMEN.

The Commission on the Status of Women shall consist of seven members. Commission members shall be

appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor only pursuant to Section 15.105. The Commission shall develop and recommend policies and practices for the City and County to reduce the particular impacts on women and girls of problems such as domestic violence, sexual harassment, employment and health care inequity, and homelessness, as well as advocate on behalf of women and girls in such areas. The Commission may be assigned additional duties and functions by ordinance or pursuant to Section 4.132.

## SEC. 4.120. COMMISSION ON AGING.

The Commission on the Aging shall consist of seven members appointed by the Mayor, pursuant to Section 3.100, for four-year terms. Members may be removed by the Mayor. The duties and functions of the Commission shall be assigned pursuant to Section 4.132.

## SEC. 4.121. BUILDING INSPECTION COMMISSION.

The Building Inspection Commission shall consist of seven members. Four members shall be appointed by the Mayor for a term of two years. Three members shall be appointed by the President of the Board of Supervisors for a term of two years. Members may be removed by the appointing officer only pursuant to Section 15.105. Vacancies occurring in the offices of appointive members, either during or at the expiration of a term, shall be filled by the appointing officer.

The four Mayoral appointments shall consist of a structural engineer, a licensed architect, a residential builder, and a representative of a community-based non-profit housing development corporation. The three Supervisorial appointments shall consist of a residential tenant, a residential landlord, and a member of the general public.

Notwithstanding any other provision of the Charter, the Commission shall have the power to appoint and remove a department head.

## SEC. 4.122. YOUTH COMMISSION.

There is hereby established a commission to be known as the Youth Commission (hereinafter called "Commission") to advise the Board of Supervisors and Mayor on issues relating to children and youth. The Commission shall operate under the jurisdiction of the Board of Supervisors.

## SEC. 4.123. YOUTH COMMISSION MEMBERSHIP; APPOINTMENT; TERMS; MEETINGS; COMPENSATION; DIRECTOR.

(a) Commission Membership. The Commission shall consist of seventeen (17) voting members, each of whom shall be between the ages of 12 and 23 years at the time of appointment. Each member of the Board of Supervisors and the Mayor shall appoint one member to the Commission. The Mayor shall also appoint five (5) members from underrepresented communities to ensure that the Commission represents the diversity of the City. All appointments shall be completed by the sixtieth day after the effective date of this charter amendment and by that date of each year thereafter. Commission members shall serve at the pleasure of their appointing authorities.

The Commission shall consist of individuals who have an understanding of the needs of young people in San Francisco, or experience with children and youth programs or youth organizations, or involvement with school or community activities. The members shall represent the diversity of ethnicity, race, gender and sexual orientation of the people of the City and County, and shall be residents of the City and County.

(b) Term of Office. Members shall serve a term of one year. The first one year term for all members shall begin upon the date the Clerk of the Board of Supervisors certifies that all members of the Commission have been appointed following the adoption of this charter amendment. Future terms of office shall begin on that date of each successive year. Members shall conduct the first meeting of the Commission within thirty days of the appointment of all members.

In the event a vacancy occurs during the term of office of any voting member, a successor shall be appointed to complete the unexpired term of the office vacated in a manner similar to that which the member was initially appointed.

(c) Removal of Members. Any member whom the Commission certifies to have missed three regularly

scheduled meetings of the Commission in any six month period without prior authorization of the Commission shall be deemed to have resigned from the Commission effective on the date of the written certification from the Commission.

(d)  Compensation. Members of the Commission shall not be compensated, nor shall they be reimbursed for expenses.

(e)  Meetings. The Commission shall meet at least once a month.

(f)  Minutes of Meetings. The Commission shall prepare and maintain permanent minutes of the actions taken during its meetings, and shall file copies with the Clerk of the Board of Supervisors.

(g)  Bylaws. To aid in the orderly conduct of business, the Commission shall have the authority to create, amend, and repeal its own code of bylaws.

## SEC. 4.124.  YOUTH COMMISSION--PURPOSE AND DUTIES.

The purpose of the Commission is to collect all information relevant to advising the Board of Supervisors and Mayor on the effects of legislative policies, needs, assessments, priorities, programs, and budgets concerning the children and youth of San Francisco. Before the Board of Supervisors takes final action on any matter that primarily affects children and youth of the City and County, the Clerk of the Board of Supervisors shall refer the matter to the Commission for comment and recommendation. The Commission shall provide any response it deems appropriate within 12 days of the date the Board of Supervisors referred the matter to the Commission. After the 12 day period has elapsed, the Board of Supervisors may act on the matter whether or not the Board has received a response. This referral requirement shall not apply to any matter where immediate action by the Board of Supervisors is necessary to protect the public interest. The Commission shall have the following duties and functions:

(a)  Identify the concerns and needs of the children and youth of San Francisco; examine existing social, economic, educational, and recreational programs for children and youth; develop and propose plans that support or improve such programs; and make recommendations thereon to the Mayor and Board of Supervisors.

(b)  Identify the unmet needs of San Francisco's children and youth through personal contact with these young people, school officials, church leaders, and others; and hold public forums in which both youth and adults are encouraged to participate.

(c)  Elicit the interest, support, and mutual cooperation of private groups (such as fraternal orders, service clubs, associations, churches, businesses, and youth organizations) and City-wide neighborhood planning collaborative efforts for children, youth and families that initiate and sponsor recommendations that address the social, economic, educational, and recreational needs of children and youth in San Francisco. Advise the Board of Supervisors and Mayor about how such recommendations could be coordinated in the community to eliminate duplication in cost and effort.

(d)  Advise about available sources of governmental and private funding for youth programs.

(e)  Submit recommendations to the Mayor and Board of Supervisors about juvenile crime prevention, job opportunities for youth, recreational activities for teenagers, opportunities for effective participation by youth in the governmental process, and changes in City and County regulations that are necessary to improve the social, economic, educational, and recreational advantages of children and youth.

(f)  Respond to requests for comment and recommendation on matters referred to the Commission by officers, departments, agencies, boards, commissions and advisory committees of the City and County.

(g)  Report to the Board of Supervisors the activities, goals, and accomplishments of the Commission by July 1 of each calendar year, effective July 1, 1997.

## SEC. 4.125.  JURISDICTION.

The Commission shall be under the jurisdiction of the Board of Supervisors; the Commission shall have only those powers created by Sections 4.122 through 4.125 or by ordinance of the Board of Supervisors.

Case 3:08-cv-01621-VRW    Document 41    Filed 09/03/2008    Page 52 of 56

## SEC. 4.126.  DEPARTMENTS--GENERAL PROVISIONS.

Except as otherwise provided by this Charter, the responsibilities of each department within the executive branch shall be prescribed by ordinance.

The administration and management of each department within the executive branch shall be the responsibility of the department head. Such officials may:

   1.  Appoint qualified individuals to fill all positions within their departments which are exempt from the Civil Service provisions of this Charter;

   2.  Adopt rules and regulations governing matters within the jurisdiction of their respective departments, subject, if applicable, to Section 4.102; and

   3.  With the approval of the City Administrator, reorganize their respective departments.

No person serving on a board or commission created by state law to discharge a state function specifically within the City and County may be employed as a paid staff member to a board or commission created by this Charter.

## SEC. 4.127.  POLICE DEPARTMENT.

The Police Department shall preserve the public peace, prevent and detect crime, and protect the rights of persons and property by enforcing the laws of the United States, the State of California and the City and County.

The Chief of Police may appoint and remove at pleasure special police officers.

The Chief of Police shall have all powers which are now or that may be conferred upon a sheriff by state law with respect to the suppression of any riot, public tumult, disturbance of the public peace or organized resistance against the laws or public authority.

DISTRICT POLICE STATIONS. The Police Department shall maintain and operate district police stations. The Police Commission, subject to the approval by the Board of Supervisors, may establish additional district stations, abandon or relocate any district station, or consolidate any two or more district stations.

OFFICE OF CITIZEN COMPLAINTS. The Mayor shall appoint a nominee of the Police Commission as the director of the Office of Citizen Complaints, subject to confirmation by the Board of Supervisors. The director shall serve at the pleasure of the Police Commission. If the Board fails to act on the appointment within 30 days, the appointment shall be deemed approved. In the event the office is vacant, until the mayor makes an appointment and that appointment is confirmed by the Board, the Police Commission shall appoint an interim director who shall serve at the pleasure of the Police Commission. The appointment shall be exempt from the civil service requirements of this Charter. The director shall never have been a uniformed member or employee of the department. The director of the Office of Citizen Complaints shall be the appointing officer under the civil service provisions of this Charter for the appointment, removal or discipline of employees of the Office of Citizen Complaints.

The Police Commission shall have the power and duty to organize, reorganize and manage the Office of Citizen Complaints. Subject to the civil service provisions of this Charter, the Office of Citizen Complaints shall include investigators and hearing officers. As of July 1, 1996, the staff of the Office of Citizen Complaints shall consist of no fewer than one line investigator for every 150 sworn members. Whenever the ratio of investigators to police officers specified by this section is not met for more than 30 consecutive days, the director shall have the power to hire, and the City Controller must pay, temporary investigators to meet such staffing requirements. No full-time or part-time employee of the Office of Citizen Complaints shall have previously served as a uniformed member of the department. Subject to rule of the Police Commission, the director of the Office of Citizen Complaints may appoint part-time hearing officers who shall be exempt from the civil service requirements of this Charter. Compensation of the hearing officers shall be at rates recommended by the Commission and established by the Board of Supervisors or by contract approved by the Board of Supervisors.

Complaints of police misconduct or allegations that a member of the Police Department has not properly performed a duty shall be promptly, fairly and impartially investigated by staff of the Office of Citizen Complaints. The Office of Citizen Complaints shall investigate all complaints of police misconduct, or that a member of the Police Department has not properly performed a duty, except those complaints which on their face clearly indicate that the acts

complained of were proper and those complaints lodged by other members of the Police Department. The Office of Citizen Complaints shall use its best efforts to conclude investigations of such complaints and, if sustained, transmit the sustained complaint to the Police Department within nine (9) months of receipt thereof by the Office of Citizen Complaints. If the Office of Citizen Complaints is unable to conclude its investigation within such nine-month period, the director of the Office of Citizen Complaints, within such nine-month period, shall inform the Chief of Police of the reasons therefor and transmit information and evidence from the investigation as shall facilitate the Chief's timely consideration of the matter. The Office of Citizen Complaints shall recommend disciplinary action to the Chief of Police on those complaints that are sustained. The director of the Office of Citizen Complaints, after meeting and conferring with the Chief of Police or his or her designee, may verify and file charges with the Police Commission against members of the Police Department arising out of sustained complaints; provided, that the director may not verify and file such charges for a period of 60 days following the transmittal of the sustained complaint to the Police Department unless the director issues a written determination that the limitations period within which the member or members may be disciplined under Government Code Section 3304, as amended from time to time or any successor provisions thereto, may expire within such 60-day period and either (i) the Chief of Police fails or refuses to file charges with the Police Commission arising out of the sustained complaint, (ii) the Chief of Police or his or her designee fails or refuses to meet and confer with the director on the matter, or (iii) other exigent circumstances necessitate that the director verify and file charges to preserve the ability of the Police Commission to impose punishment pursuant to Section A8.343. The director of the Office of Citizen Complaints shall schedule hearings before hearing officers when such is requested by the complainant or a member of the department and, in accordance with rules of the Commission, such a hearing will facilitate the fact-finding process. The Board of Supervisors may provide by ordinance that the Office of Citizen Complaints shall in the same manner investigate and make recommendations to the Chief of Police regarding complaints of misconduct by patrol special police officers and their uniformed employees.

Nothing herein shall prohibit the Chief of Police or a commanding officer from investigating the conduct of a member of the department under his or her command, or taking disciplinary or corrective action, otherwise permitted by this Charter, when such is warranted; and nothing herein shall limit or otherwise restrict the disciplinary powers vested in the Chief of Police and the Police Commission by other provisions of this Charter.

The Office of Citizen Complaints shall prepare in accordance with rules of the Commission monthly summaries of the complaints received and shall prepare recommendations quarterly concerning policies or practices of the department which could be changed or amended to avoid unnecessary tension with the public or a definable segment of the public while insuring effective police services. The Office of Citizen Complaints shall prepare a report for the President of the Board of Supervisors each quarter. This report shall include, but not be limited to, the number and type of complaints filed, the outcome of the complaints, and a review of the disciplinary action taken. The President of the Board of Supervisors shall refer this report to the appropriate committee of the Board of Supervisors charged with public safety responsibilities. Said committee may issue recommendations as needed.

In carrying out its objectives the Office of Citizen Complaints shall receive prompt and full cooperation and assistance from all departments, officers and employees of the City and County which shall promptly produce all records requested by the Office of Citizen Complaints except for records the disclosure of which to the Office of Citizen Complaints is prohibited by law. The director may also request and the Chief of Police shall require the testimony or attendance of any member of the Police Department to carry out the responsibilities of the Office of Citizen Complaints.

BUDGET. Monetary awards and settlements disbursed by the City and County as a result of police action or inaction shall be taken exclusively from a specific appropriation listed as a separate line item in the Police Department budget for that purpose.

POLICE STAFFING. The police force of the City and County shall at all times consist of not fewer than 1,971 full duty sworn officers. The staffing level of the Police Department shall be maintained with a minimum of 1,971 full duty sworn officers thereafter. That figure may be adjusted pursuant to Section 16.123.

All officers and employees of the City and County are directed to take all acts necessary to implement the provisions of this section. The Board of Supervisors is empowered to adopt ordinances necessary to effectuate the purpose of this section including but not limited to ordinances regulating the scheduling of police training cases.

Further, the Commission shall initiate an annual review to civilianize as many positions as possible to maximize police presence in the communities and submit that report to the Board of Supervisors annually for review and approval.

The number of full duty sworn officers in the Police Department dedicated to neighborhood policing and patrol for fiscal year 1993-1994 shall not be reduced in future years, and all new full duty sworn officers authorized for the Police Department shall also be dedicated to neighborhood community policing, patrol and investigations.

PATROL SPECIAL POLICE OFFICERS. The Commission may appoint patrol special police officers and for

Case 3:08-cv-01621-VRW   Document 41   Filed 09/03/2008   Page 54 of 56

cause may suspend or dismiss patrol special police officers after a hearing on charges duly filed with the Commission and after a fair and impartial trial. Patrol special police officers shall be regulated by the Police Commission, which may establish requirements for and procedures to govern the position, including the power of the Chief of Police to suspend a patrol special police officer pending a hearing on charges. Each patrol special police officer shall be at the time of appointment not less than 21 years of age and must possess such physical qualifications as may be required by the Commission.

Patrol special police officers may be designated by the Commission as the owners of a certain beat or territory which may be established or rescinded by the Commission. Patrol special police officers designated as the owners of a certain beat or territory or the legal heirs or representatives of the owners may dispose of their interest in the beat or territory to a person of good moral character, approved by the Police Commission and eligible for appointment as a patrol special police officer.

Commission designation of beats or territories shall not affect the ability of private security companies to provide on-site security services on the inside or at the entrance of any property located in the City and County.

(Amended November 2003; March 2004)

## SEC. 4.128.  FIRE DEPARTMENT.

The Fire Department shall perform duties and enforce all applicable laws pertaining to the protection from, and the prevention, suppression, control and investigation of fires.

The Fire Chief shall cause the Fire Department to inspect all occupied or vacated structures to determine compliance with applicable laws relative to fire prevention, protection and control and also the protection of persons and property from fire.

The Fire Chief may during a conflagration cause to be removed any structure for the purpose of checking the progress of the conflagration.

## SEC. 4.129.  DEPARTMENT OF ADMINISTRATIVE SERVICES.

The director of the Department of Administrative Services shall purchase all supplies, equipment and contractual services required by the several departments and offices of the City and County, except as otherwise provided in the Administrative Code. Except in cases of emergency, the director shall not enter into any contract or issue any purchase order unless the Controller shall certify thereon that sufficient unencumbered balances are available in the proper fund to meet the payments under such purchase order or contract as these become due. The director shall have charge of the central warehouses, central storerooms, central garage and shop.

The director shall by rules and regulations approved by the Controller, designate and authorize appropriate personnel within the Department of Administrative Services to exercise the director's signature powers for purchase orders and contract.

The director shall have authority to exchange used materials, supplies and equipment to the advantage of the City and County, advertise for bids, and to sell and otherwise dispose of personal property belonging to the City and County. The director shall have authority to require the transfer of surplus property in any department to stores or to other departments.

The director shall manage all public buildings, facilities and real estate of the City and County, unless otherwise provided for in this Charter.

Additional duties and functions of the Department of Administrative Services shall be assigned the City Administrator, by ordinance or pursuant to Section 4.132.

## SEC. 4.130.  DEPARTMENT OF PUBLIC WORKS.

The duties and functions of the Department of Public Works shall be assigned by the City Administrator, by ordinance or pursuant to Section 4.132.

Case 3:08-cv-04621-VRW    Document 41    Filed 09/03/2008    Page 55 of 56

## SEC. 4.131. COUNTY CLERK.

The County Clerk shall perform all duties of the County Clerk-Recorder until such office is merged into the Office of the Assessor-Recorder pursuant to Section 6.101.

## SEC. 4.132. EXECUTIVE BRANCH REORGANIZATION.

The Mayor, by issuing a notice to the Board of Supervisors, may reorganize duties and functions between departments and other units of government within the executive branch. Such reorganization shall become effective 30 days after its issuance unless disapproved by the Board of Supervisors during that time.

A proposed reorganization shall provide for the transfer of:

1. Civil service employees who are engaged in the performance of a function or duty transferred to another office, agency or department; such transfer shall not adversely affect status, position, compensation or pension or retirement rights and privileges;

2. Any unexpended balances of appropriations and other funds available for use in connection with any office, agency, department or function affected by the reorganization; any unexpended balance so transferred shall be used only for the purpose for which the appropriation was originally made, except as this Charter otherwise permits.

## SEC. 4.133. TAXI COMMISSION.

(a) The Taxi Commission shall consist of seven members, appointed by the Mayor. The appointments shall include a member from the senior or disabled communities, a driver who does not hold a taxicab medallion, a manager in a taxicab company (either a medallion holder or a company representative), a member from the hospitality industry, a member from the labor community, a member from the neighborhoods, and a member of the general public not affiliated with any of the other enumerated categories.

Pursuant to Government Code Section 87103, individuals appointed to the Commission under this Section are intended to represent and further the interest of the particular industries, trades, or professions specified herein. Accordingly, it is found that for purposes of persons who hold such office, the specified industries, trades, or professions are tantamount to and constitute the public generally within the meaning of Government Code Section 87103.

The commissioners appointed to take office upon the effective date of this Charter section shall by lot classify their terms so that the terms of three of the commissioners shall expire at noon on the first anniversary of such date, and the terms of the remaining four commissioners shall expire at noon on the second anniversary of the effective date. On the expiration of these and successive terms of office, the appointments shall be made for two-year terms.

Members may be removed by the Mayor only pursuant to Section 15.105. Vacancies occurring in the offices of members, either during or at the expiration of a term, shall be filled by the Mayor.

(b) Effective March 1, 1999, the Commission shall succeed to all powers and responsibilities relating to taxicabs and other motor vehicles for hire, other than criminal enforcement, now vested in the Police Commission, the Police Department or the Chief of Police. The Taxi Commission may be assigned additional duties and functions by ordinance or pursuant to Section 4.132.

(c) All costs associated with the operations of the Taxi Commission, and such officers and employees as are necessary for the Commission to operate and administer the department and are authorized pursuant to the budgetary and fiscal provisions of the Charter, shall be recovered from permit, license and other fees charged for permit-holders, applicants, and other persons by the Commission. The Board of Supervisors shall set fees sufficient to offset the costs of the Commission's operations and any such officers and employees. Notwithstanding the above, the Board of Supervisors may continue to offer reduced fees to operators who participate in the City's Paratransit Program, and offset the reduction in revenues with a contribution from the General Fund.

(Added November 1998)

## SEC. 4.134.  SMALL BUSINESS COMMISSION.

(a)  There shall be a Small Business Commission to oversee the San Francisco Office of Small Business. The Commission shall consist of seven members, who shall serve at the pleasure of the appointing authority. The Mayor shall appoint four members of the Commission; the Board of Supervisors shall appoint the remaining three members. The Mayor shall designate two of his or her initial appointments to serve for two-year terms; the Board of Supervisors shall designate one of its initial appointments to serve a two-year term. Thereafter, all commissioners shall serve for four-year terms.

(b)  At least five of the individuals appointed to the Commission shall be owners, operators, or officers of San Francisco small businesses. One of the individuals appointed to the Commission may be either a current or former owner, operator, or officer of a San Francisco small business. One member of the Commission may be an officer or representative of a neighborhood economic development organization or an expert in small business finance.

Pursuant to Government Code Section 87103, individuals appointed to the Commission under this Section are intended to represent and further the interest of the particular industries, trades, or professions specified herein. Accordingly, it is found that for purposes of persons who hold such office, the specified industries, trades, or professions are tantamount to and constitute the public generally within the meaning of Government Code Section 87103.

(c)  The Mayor and the Board of Supervisors shall select Commission members who reflect the diversity of neighborhood and small business interests in the City.

(Added November 2003)